Cory L. Braddock (ASB #024668)
Mark Webb (ASB #034946)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
E-Mail: cbraddock@swlaw.com
mwebb@swlaw.com
*Attorneys for Plaintiff Wine Education Council*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wine Education Council, a Delaware non-profit corporation<br><br>Plaintiff,<br><br>v.<br><br>Arizona Rangers, an Arizona non-profit corporation<br><br>Defendant. | No.<br><br>**COMPLAINT** |

Plaintiff, Wine Education Council ("WEC"), a Delaware non-profit corporation, for its Complaint against Arizona Rangers, an Arizona non-profit corporation, alleges as follows:

**THE PARTIES, JURISDICTION, AND VENUE**

1. WEC is a Delaware non-profit corporation with its principal place of business in Texas.

2. Upon information and belief, Arizona Rangers is an Arizona non-profit corporation with its principal place of business in Arizona.

3. The East Valley Company is a division of the Arizona Rangers located in Scottsdale, Arizona and that operates in and around Maricopa County.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

5. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to this claim took place in Arizona.

## FACTUAL BACKGROUND

6. WEC is a non-profit, educational organization that promotes the development and effectiveness of viticulture professionals through formal study, post-graduate training, and advanced enrichment opportunities.

7. Additionally, WEC provides support to numerous charitable organizations that are consistent with WEC's purpose.

8. In promoting oenological research, WEC acknowledges a need to address issues associated to the abuse of alcohol.

9. WEC provided charitable grants to Arizona Rangers and sheriffs' offices in Arizona to assist law enforcement's efforts to curb driving under the influence ("DUI"), public intoxication, and other dangers related to alcohol abuse.

10. Because of WEC's past work with DUI education and enforcement, WEC was named as a backup beneficiary of certain charitable grants made to Arizona Rangers in the event it ceased to exist, or it failed to use the donated funds consistent with the terms of each specific grant.

11. Between November 30, 2016 and October 3, 2017, Arizona Rangers received six (6) restricted charitable grants in an amount totaling $175,000.00.

12. Before each restricted grant was made, the East Valley Company or the Arizona Rangers affirmatively requested charitable donations subject to conditions regarding the purpose and intended use for the funds.

13. Arizona Rangers used some of the grant funds as directed, though the majority of the funds were either misused, neglected, or simply lost.

14. Each grant included express language that stated the approved purpose or purposes for the grant and, thus, limited the use of the funds for the stated purpose.

15. For example, a grant letter dated May 15, 2017 states that the grant funds "will be used per the following guidelines and for the specified purposes set forth below."

16. Grants were issued that included conditions that restricted the use of grant funds to, among other things, the following items for use by the East Valley Company of Arizona Rangers: (1) a printer; (2) access to Westlaw; (3) optics for search and rescue work, (4) funding for dedicated law enforcement training; and (5) training programs.

17. Arizona Rangers, however, mislead the grantor about the nature and adequacy of their intended training programs.

18. In fact, the much-lauded training director was not qualified to fulfill this critical role and WEC later learned that the training director had been dismissed from the Fort Worth Police Department for unknown reasons prior to completing his own training.

19. On Thursday, November 23, 2017 (Thanksgiving Day) Richard Ellis, the putative deputy state commander and *de facto* chief operating officer of Arizona Rangers, terminated the program.

20. Subsequent calls by the granting charity to Kenn Barrett, state commander and *de facto* president of the Arizona ranger corporation, indicated that Arizona Rangers would stand by Mr. Ellis' decision to terminate the program.

21. The subsequent state commander, Robert Cressman, similarly refused to rescind Mr. Ellis's decision as did two subsequent commanders, Gary Jordan and Michael Droll, who have also failed to adhere to the grant terms.

22. The granting charity notified WEC of its right to pursue the funds that Arizona rangers were not willing to use as required.

23. While Arizona Rangers agreed to spend the grant money in accordance with each specific grant, Arizona Rangers has failed to, and continues to refuse to, use the grants in accordance with the express language in the specific grants.

24. Rather than using the grant funds as required, the funds were redirected to Arizona Rangers' headquarters discretionary budget.

25. Further, Arizona Rangers' staff prevented materials and funds from being used in accordance with the grants.

26. Arizona Rangers also mislead the grantor about the nature and adequacy of their training programs.

## COUNT ONE

### Breach of Contract

27. WEC incorporates by reference the statements and allegations contained in the preceding paragraphs.

28. The grant letters, to which defendant agreed to be bound, constitute valid and enforceable contracts in which WEC is either a party or a third-party beneficiary.

29. The contracts impose on defendant a duty to use the grants in a specified manner.

30. Defendant has breached the contracts by using the grant funds for purposes outside of the specified manner.

31. WEC has performed its duties under the contracts.

32. As a direct and proximate result of defendant's breaches of the contracts, WEC has suffered damages in an amount to be proven at trial but in excess of $75,000.00.

33. In addition to recovering its damages, WEC is entitled to recover its reasonable attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01(A).

## COUNT TWO

### Breach of Implied Covenant of Good Faith and Fair Dealing

34. WEC incorporates by reference the statements and allegations contained in the preceding paragraphs.

35. Implicit in all contracts is the covenant of good faith and fair dealing that imposes on each party a duty of good faith and fair dealing.

36. Defendant requested grant funds that were issued to Defendant for specific purposes and on the belief the funds would be spent in accordance with those purposes.

37. Defendant had a duty to operate in good faith by using the funds in accordance with the negotiated conditions.

38. Defendant breached this duty because defendant did not use the charitable grant funds in accordance with the grant letters. Rather, Arizona Rangers used such funds for unapproved purposes and diverted the funds to non-approved purposes.

39. As a direct and proximate result of defendant's breach of the implied covenant of good faith and fair dealing, WEC has suffered damages.

40. WEC is entitled to recover its reasonable attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01(A).

## COUNT THREE

### Unjust Enrichment (in the alternative)

41. WEC incorporates by reference the statements and allegations contained in the preceding paragraphs.

42. Upon information and belief, Arizona Rangers contends that its agent who negotiated the grant conditions did so without authorizations and, thus, did not bind Arizona Rangers to the conditions in the grant letters.

43. Accordingly, and in the alternative to WEC's breach of contract claim, WEC did not agree to provide funds to Arizona Rangers for any use outside of the stated conditions found within the grant letters.

44. Notwithstanding WEC's stated limitations, Arizona Rangers enriched themselves by using the grant funds for purposes other than those stated in the grant letters rather than providing the funds to WEC.

45. Because WEC was designated as the backup beneficiary for any unused funds, to the extent Arizona Rangers used such funds outside of the conditions in the grant letters, WEC was impoverished when it did not receive the funds as the backup beneficiary.

46. Any grant funds that went unused by Arizona Rangers or that could not be used in accordance with the grant letters were intended to benefit WEC as a backup beneficiary.

47. Arizona Rangers misappropriation of the funds or use of the funds for purposes outside of the conditions limiting their use was without justification and both enriched Arizona Rangers and impoverished WEC.

48. As a direct and proximate result of Arizona Rangers's unjust enrichment, WEC has suffered damages in an amount to be proven at trial in excess of $75,000.00.

49. WEC is entitled to recover its reasonable attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01(A).

## **Prayer for Relief**

WHEREFORE, WEC respectfully requests that the Court enter judgment against defendant in WEC's favor and prays for the following relief:

A. For an award of compensatory damages in an amount commensurate with grant money that was not spent in accordance with the charitable grants and in an amount to be proven at trial.

B. For an award of costs and reasonable attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01(A).

C. For an award of costs and prejudgment interest at the highest rate allowable by law; and

D. For such additional relief as the Court deems just and proper under the circumstances.

DATED this ___ day of April, 2019.

                      SNELL & WILMER L.L.P.

                      By: *s/ Cory L. Braddock*
                           Cory L. Braddock
                           Mark Webb
                           One Arizona Center
                           400 E. Van Buren, Suite 1900
                           Phoenix, Arizona 85004-2202

4818-3565-0446