Jared Simmons (Bar No. 018624)
jared@sglawaz.com
SIMMONS & GOTTFRIED, PLLC
8160 E. Butherus Drive, Suite 7
Scottsdale, Arizona  85260
Telephone:  (480) 998-1500
Facsimile:  (480) 998-6074

Jeffrey Messing (Bar No. 009768)
messing@bsmplc.com
BALL, SANTIN & MCLERAN, PLC
2999 North 44th Street, Suite 500
Phoenix, Arizona  85018
Telephone:  (602) 840-1400
Facsimile:  (602) 840-4411
*Attorneys for Defendant Arizona Rangers*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Wine Education Council, a Delaware non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Rangers, an Arizona non-profit corporation,<br><br>Defendant. | Case No. CV-19-02235-PHX-DWL<br><br>**AMENDED ANSWER TO COMPLAINT AND AMENDED THIRD PARTY COMPLAINT**<br><br>**(Jury Trial Demanded)** |
| Arizona Rangers, an Arizona non-profit corporation,<br><br>Third Party Plaintiff,<br><br>v.<br><br>Grant G. Winthrop, a single man,<br><br>Third Party Defendant. | |

For its Amended Answer to the Complaint in the above-captioned matter, Defendant Arizona Rangers, admits, denies and alleges as follows:

**Parties, Jurisdiction And Venue**

1.      Defendant lacks sufficient knowledge or information to form a belief about the truth of allegations contained in paragraph 1 of the Complaint and, therefore, denies the same.

2.      Defendant admits the allegations contained in paragraph 2 of the Complaint.

3.      Answering paragraph 3 of the Complaint, Defendant alleges that the "East Valley Company" is an unincorporated branch of the Arizona Rangers.

4.      Defendant lacks sufficient knowledge or information to form a belief about the truth of allegations contained in paragraph 4 of the Complaint and, therefore, denies the same.

5.      Answering paragraph 5 of the Complaint, Defendant admits that venue is proper in this Court, but denies that the events alleged in the Complaint occurred as alleged.

6.      Defendant lacks sufficient knowledge or information to form a belief about the truth of allegations contained in paragraph 6 of the Complaint and, therefore, denies the same.

7.      Defendant lacks sufficient knowledge or information to form a belief about the truth of allegations contained in paragraph 7 of the Complaint and, therefore, denies the same.

8.      Defendant lacks sufficient knowledge or information to form a belief about the truth of allegations contained in paragraph 8 of the Complaint and, therefore, denies the same.

9.      Defendant denies the allegations contained in paragraph 9 of the Complaint.

10.     Answering paragraphs 10 and 11 of the Complaint, Defendant alleges that it received a total of six (6) grants from the American Endowment Foundation and/or the Veritas Endowment Fund totaling $175,000, during the period April 31, 2017 through October 13, 2017.  Copies of five grant letters and checks are attached as Exhibits 1-5 to this Answer.  Of the five grant letters, only one, dated June 5, 2017 in the amount of $40,000 (Exhibit 2, hereto) references Plaintiff Wine Education Council in any way (by incorporating a letter dated May 15, 2017 purportedly written on behalf of the Arizona Rangers which Defendant is informed and believes was actually drafted by Grant Winthrop).  Further, only a small portion of the grants even purported to restrict the Arizona Rangers' use of the funds in any way.  Defendant Arizona Rangers further alleges that some or all of the funds actually spent were in fact spent by and/or at the direction of Grant G. Winthrop who, Defendant is informed and believes, was actually the principal directing and funding the grants. Specifically, at least five of the grants were made by either the Veritas Endowment Fund, a fund of the American Endowment Foundation, or by the American Endowment Foundation

itself.  According to the American Endowment Foundation's website it is an independent donor advised fund.  Defendant is informed and believes Mr. Winthrop is the donor who funded and controls the Veritas Endowment Fund which made at least four of the grants, and, further, that Mr. Winthrop is also the anonymous donor behind the grant from the American Endowment Fund.  Defendant is informed and believes Mr. Winthrop was an associate member of the Arizona Rangers who not only made the grants, but also controlled how some or all of the funds were used.  Defendant denies the remaining allegations contains in paragraphs 10 and 11 of the Complaint.

11.    Defendant's response to paragraph 11 of the Complaint is contained in numbered paragraph 10 of this Answer.

12.    Defendant denies the allegations contained in paragraph 12 of the Complaint.

13.    Defendant admits a large portion of the $175,000 provided was used in accordance with directions contained in the grant letters.  Defendant denies the remaining allegations contained in paragraph 13 of the Complaint and incorporates the allegations contained in its answer to paragraphs 10 and 11 above.

14.    Defendant denies the allegations contained in paragraph 14 of the Complaint and incorporates the allegations contained in its answer to paragraphs 10 and 11 above.

15.    Defendant admits that the letter referenced in paragraph 15 of the Complaint, which is contained in Exhibit 2 to this Answer, contains the quoted language, but alleges it also specifies that large portions of the funds are to be added to "Troop discretionary funds." Defendant denies the remaining allegations contained in paragraph 15 of the Complaint.

16.    Answering paragraph 16 of the Complaint, Defendant admits that certain of the grant letters contained some limiting language, but allege that they also contained broad language of discretion.  Defendant denies the remaining allegations contained in paragraph 16 of Complaint.

17.    Defendant denies the allegations contained in paragraph 17 of the Complaint.

18.    Answering paragraph 18 of the Complaint, Defendant admits Dan Fogleton was dismissed from the Fort Worth Police Department 30 years ago.  Defendant alleges he

was and is an extremely qualified training director.  Equally important, no one person is responsible for training.  There were and are other training directors for different aspects such as training sergeants at every company, defensive tactics, firearms, etc., and the training programs are, in fact, still in operation.  Defendant denies the remaining allegations contained in paragraph 18 of the Complaint.

19.    Answering paragraph 19 of the Complaint Defendant admits that on or about November 23, 2017 Rick Ellis, who at that time was Defendant's Deputy State Commander, not the Chief Operating Officer, spoke to Grant Winthrop.  Defendant alleges that Mr. Ellis explained that no grants to the Arizona Rangers should be made without obtaining the board's approval and that Mr. Winthrop and Mr. Ramirez had been acting without the board of directors' authority in obtaining and using grant monies.  He further explained that no further monies were to be sought or accepted without the board's approval and oversight.  Further, Mr. Ellis told Mr. Winthrop that his personal use of funds supposedly given as a charitable donation to the Arizona Rangers was inappropriate and unacceptable.  Mr. Ellis also explained that Mr. Winthrop's conduct in obtaining and using a credit card in the Arizona Rangers' name without the Board's knowledge, authorization, approval or oversight was also unacceptable.  Defendant denies the remaining allegations contained in paragraph 19 of the Complaint.

20.    Answering paragraph 20 of the Complaint, defendant admits that Mr. Barrett confirmed to Mr. Winthrop that Mr. Ellis spoke on behalf of the Arizona Rangers' Board of Directors, and that no further funds should be sought, accepted, or spent without the Board's express approval and oversight.  Defendant denies the remaining allegations contained in paragraph 20 of the Complaint.

21.    Answering paragraph 21 of the Complaint, Defendant admits that the Arizona Rangers continues to refuse to allow anyone to solicit, accept, or spend funds on behalf of the Arizona Rangers without Board approval and oversight.  Defendant denies the remaining allegations contained in paragraph 21 of the Complaint.

22.    Defendant lacks sufficient knowledge or information to form a belief about the truth of allegations concerning communications between the unidentified "granting charity" and Plaintiff as alleged in paragraph 22 of the Complaint.  Defendant denies that the Arizona Rangers violated the terms of any restricted grant and/or that Plaintiff has any standing or capacity to pursue funds as alleged or at all.

23.    Defendant denies the allegations contained in paragraph 23 of the Complaint.

24.    Defendant denies the allegations contained in paragraph 24 of the Complaint.

25.    Defendant denies the allegations contained in paragraph 25 of the Complaint.

26.    Defendant denies the allegations contained in paragraph 26 of the Complaint.

27.    Paragraph 27 does not contain an independent factual allegation requiring a response.

28.    Defendant denies the allegations contained in paragraph 28 of the Complaint and further alleges that the charitable gifts at issue in this case were not contracts.

29.    Defendant denies the allegations contained in paragraph 29 of the Complaint.

30.    Defendant denies the allegations contained in paragraph 30 of the Complaint.

31.    Defendant denies the allegations contained in paragraph 31 of the Complaint and affirmatively alleges the grants were not contracts and neither Plaintiff nor the donor have the standing or capacity to sue.

32.    Defendant denies the allegations contained in paragraph 32 of the Complaint.

33.    Defendant denies the allegations contained in paragraph 33 of the Complaint.

34.    Paragraph 34 does not contain an independent factual allegation requiring a response.

35.    Defendant admits the allegations contained in paragraph 35 of the Complaint but alleges the charitable gifts at issue in this case were not contracts and further denies that Plaintiff was or is a party to the "transactions."

36.    Defendant denies the allegations contained in paragraphs 36, 37, 38, 39 and 40 of the Complaint.

37.     Paragraph 41 does not contain an independent factual allegation requiring a response.

38.     Answering paragraph 42 of the Complaint, Defendant admits that neither Jeff East nor Anthony Ramirez, the two individuals Plaintiff previously identified as purported agents of Defendant Arizona Rangers, had actual or apparent authority to bind Defendant to a contract or restrictions on a charitable gift.

39.     Defendant denies the allegations contained in paragraphs 43, 44, 45, 46, 47, 48 and 49, and affirmatively alleges that Plaintiff did not make the gifts at issue in this litigation and in any event lacks both standing and capacity to assert the claims alleged in the Complaint.

40.     Defendant denies each and every allegation of the Complaint not previously admitted or otherwise plead to.

41.     Plaintiff lacks standing and/or capacity to assert the claims alleged in the Complaint.

42.     Plaintiff's claims are barred by estoppel, waiver, unclean hands and its failure to notify the Arizona Attorney General (who is the only entity with the standing and capacity to sue to enforce the terms of alleged restrictions on charitable gifts in Arizona) of its claims.

43.     Plaintiff's claims are barred by its failure to join the Arizona Attorney General, the American Endowment Foundation and the Veritas Endowment Fund as required parties to this action.

44.     At the time of this Answer, Defendant does not know which additional affirmative defenses may apply.  Rather than waive the same, Defendant reserves the right to amend this Answer to assert any additional matter of avoidance or affirmative defense revealed through disclosure or discovery.

WHEREFORE, having fully Answered, Defendant requires relief as follows:

1.     That Plaintiff's Complaint be dismissed and Plaintiff take nothing thereby;

2.     For an award of attorney fees and costs pursuant to A.R.S. § 12-341.01 and § 12-341; and

3.     For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendant demands a jury trial on all issues and/or causes of action to which it is entitled to a trial by jury.

## AMENDED THIRD PARTY COMPLAINT

Third Party Plaintiff, Arizona Rangers, for its Amended Third Party Complaint against Third Party Defendant Grant G. Winthrop, alleges as follows:

1.     Third Party Plaintiff, Arizona Rangers ("Arizona Rangers" or "Third Party Plaintiff"), is an Arizona non-profit corporation with its principal place of business in Arizona.

2.     Third Party Plaintiff, Arizona Rangers, is informed, believes and therefore alleges that Third Party Defendant Grant G. Winthrop ("Winthrop" or "Third Party Defendant") is an unmarried man currently domiciled in Seattle, Washington.

3.     This Court has jurisdiction over this Third Party Complaint pursuant to both 28 U.S.C. § 1332(a)(1), because there is diversity of jurisdiction between the parties and the amount in controversy exceeds $75,000.00, and because the Third Party Plaintiff's indemnity claims are ancillary to the original action.

4.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events that give rise to the third party claim took place in Arizona.

## FACTUAL BACKGROUND

5.     Arizona Rangers is a non-profit, uniformed law enforcement auxiliary that reports to the Governor of Arizona.

6.     To become a member of the Arizona Rangers, a candidate, among other things, must pass all required background checks, complete a minimum ninety (90) day probationary period and take the Ranger Oath of Allegiance.

7.     A member who has met the basic requirements for acceptance into the Arizona Rangers and has taken the Ranger Oath of Allegiance but is still serving a minimum ninety (90) day period of observation is known as a "Probationary Ranger".

8.     An "Associate Ranger" is defined as personnel who wish to assist in a position within the Rangers organization that does not constitute that of an active Ranger and have met certain basis requirements.

9.     Winthrop applied for membership in the Arizona Rangers and was on probationary status by December 2016.

10.    Winthrop was formally sworn in as an Associate Ranger member of Arizona Rangers on or about March 7, 2017.

11.    At the time Winthrop solicited the donations, he was either a probationary ranger or an associate member of the Arizona Rangers East Valley Company.

12.    At the time Arizona Rangers received the funds, Winthrop was either a probationary ranger or an associate member of the Arizona Rangers East Valley Company.

13.    As a member of the Arizona Rangers, Winthrop agreed to comply with the bylaws, rules and regulations, and other governing documents of the Arizona Rangers.

14.    The Complaint filed by Plaintiff Wine Education Council ("WEC") concerns the use of six donations totaling $175,000 that Winthrop solicited on behalf of Arizona Rangers from American Endowment Foundation between November 2016 and September 2017.

15.    During the period from November 2016 through September 2017, Winthrop was instrumental in causing grant applications to be submitted to the American Endowment Foundation and/or the Veritas Endowment Fund.

16.    Each grant/donation to Arizona Rangers was a separate transaction, with independent terms.

17.    American Endowment Foundation operates a donor-advised funds program.

18.    All funds provided by American Endowment Foundation from its donor advised funds are exclusively distributed to non-profits for charitable purposes.

19.    As a donor-advised fund, American Endowment Foundation would not make distributions from one of its donor-advised fund that will result in the donor or the donor's family member receiving more than an incidental benefit.

20.     Third Party Plaintiff is informed, believes and therefore alleges that Veritas Endowment Fund is a donor advised fund established by Winthrop and/or the family of Grant Winthrop with American Endowment Foundation.

21.     Third Party Plaintiff is informed, believes and therefore alleges that Winthrop, at all relevant times, was and is the donor advisor for Veritas Endowment Fund.

### *Grant/Donation 1*

22.     On or about November 2, 2016, Winthrop, as the donor advisor for Veritas Endowment Fund, submitted an online grant recommendation to American Endowment Foundation recommending that Arizona Rangers be awarded $10,000.

23.     In the grant recommendation submission, Winthrop requested that the $10,000 grant be made to Arizona Rangers anonymously.

24.     For the 500-character max statement to be included in the grant letter accompanying the $10,000, Winthrop inputted the following: "Thank you for all for your efforts on behalf of the people of Arizona."

25.     On or about November 30, 2016, American Endowment Foundation issued check No. 106193 to the Arizona Rangers with a cover letter dated November 30, 2016 that repeated verbatim the language Winthrop included in his online grant recommendation.  True and correct copies of the recommendation submission confirmation, the cover letter, and the $10,000 remittance check to Arizona Rangers are collectively attached as **Exhibit 1**.

26.     There were no written requirements that the funds be used for any particular purchase or category of items.

27.     Arizona Rangers spent the $10,000 donation that was received on or about November 30, 2016 in accordance with the terms of the grant/donation.

### *Grant/Donation 2*

28.     On or about March 19, 2017, Winthrop, as the donor advisor for Veritas Endowment Fund, submitted an online grant recommendation to American Endowment Foundation recommending that Arizona Rangers be awarded $45,000.

29.     For the 500-character max statement to be included in the grant letter accompanying the $45,000, Winthrop inputted the following: "This grant is made pursuant to the signed request from the East Valley company to procure body armor [for] the Arizona Rangers, Pinal Sheriffs Office Posse, badges for the rangers, and welts access for counsel at the Arizona Rangers. In addition, a portion shall be designated to the associate ranger training and use to be used at the discretion of the commander or acting commander of the East Valley Associate Ranger Troop."

30.     The referenced request was a grant letter dated March 20, 2017 that was drafted by Winthrop and bore the signatures of Anthony Ramirez, an attorney and a probationary Ranger, and Captain Jeff East, the Arizona Ranger in charge of the East Valley Company.

31.     When concerns were later raised by Arizona Rangers about the proprietary of referring to Anthony Ramirez as "general counsel" in that letter, Winthrop admitted that he had drafted the letter and wrongfully ascribed the title of "general counsel" to Anthony Ramirez.

32.     The March 20, 2017 letter was not preapproved by the Arizona Rangers Board of Directors.

33.     On or about April 3, 2017, American Endowment Foundation issued check No. 116837 to the Arizona Rangers with a cover letter dated April 3, 2017 that repeated verbatim the language Winthrop included in his online grant recommendation. True and correct copies of the recommendation submission confirmation, the March 20, 2017 request, the cover letter, and the $45,000 remittance check to Arizona Rangers are collectively attached as **Exhibit 2**.

34.     From the $45,000 that was received on or about April 3, 2017, Arizona Rangers:

      a.     expended $19,921.80 for body armor,

      b.     donated $2,000.00,

      c.     spent at least $1,808.65 towards new badges and

d.       paid $12,335.28 for two non-transferrable access keys for two-year Westlaw subscription (2017-2019) for Anthony Ramirez and Grant G. Winthrop.

35.    Those purchases totaled $36,065.73.

36.    The unrestricted funds were used within the discretion of the East Valley Company, as provided for by the terms of the April 3, 2017 donation/grant.

37.    Anthony Ramirez is an attorney licensed in Arizona and Winthrop is an attorney licensed in New Hampshire.  Both graduated from ABA accredited law schools – Arizona Summit Law School and George Mason respectively.

38.    Arizona Rangers spent the $45,000 donation that was received on or about April 3, 2017 in accordance with the terms of the grant/donation.

### *Grant/Donation 3*

39.    On or about May 16, 2017, Winthrop, as the donor advisor for Veritas Endowment Fund, submitted an online grant recommendation to American Endowment Foundation recommending that Arizona Rangers be awarded $40,000.

40.    For the 500-character max statement to be included in the grant letter accompanying the $40,000, Winthrop inputted the following: "This grant is made per the request from Jeff East and Anthony Ramirez dated May 15, 2017 and is to be used as the letter describes."

41.    The referenced request was letter dated May 15, 2017 requesting $37,500 that was again drafted by Winthrop and again borne the signatures of Anthony Ramirez and Jeff East.

42.    The May 15, 2017 letter was not preapproved by the Arizona Rangers Board of Directors.

43.    The May 15, 2017 letter was the <u>only</u> donation/grant-related communication that mentioned Wine Education Council.  It provides that, "if for any reason the East Valley Ranger Troop ceases to operate all property acquired for the Troop shall be turned over to the Wine Education Council. Similarly, any Troop discretionary funds shall be turned over to the Wine Education Council should the Troop cease to operate for any reason."

44.    On or about June 5, 2017, American Endowment Foundation issued check No. 120630 to the Arizona Rangers with a cover letter dated June 5, 2017 that repeated verbatim the language Winthrop included in his online grant recommendation.  True and correct copies of the recommendation submission confirmation, the May 15, 2017 request, the cover letter, and the $40,000 remittance check to Arizona Rangers are collectively attached as **Exhibit 3**.

45.    From the $40,000 that was received on or about June 5, 2017, Arizona Rangers:

    a.    spent $3,659.95 for the single action pistol that was auctioned off,

    b.    at least $6,318.90 for ID cards,

    c.    at least $9,400.00 for Cowboy hats, and

    d.    $9,693.99 for night and thermal imaging monoculars.

46.    These purchases totaled $29,072.84.

47.    More than $3,000 was also spent to procure equipment and provide associate ranger training for the East Valley Company at the discretion of its commander or acting commander.

48.    The unrestricted funds were used within the discretion of the East Valley Company of the Arizona Rangers, as provided for by the terms of the June 5, 2017 donation.

49.    Arizona Rangers spent the $40,000 donation that was received on or about June 5, 2017 in accordance with the terms of the grant/donation.

### *Grant/Donation 4*

50.    On or about June 30, 2017, Winthrop, as the donor advisor for Veritas Endowment Fund, submitted an online grant recommendation to American Endowment Foundation recommending that Arizona Rangers be awarded $30,000.

51.    For the 500-character max statement to be included in the grant letter accompanying the $30,000, Winthrop inputted the following: "This grant is to be divided equally between the company and the associate ranger troop."

52.    On or about July 31, 2017, American Endowment Foundation issued check No. 123804 to the Arizona Rangers with a cover letter dated July 31, 2017 that repeated verbatim the language Winthrop included in his online grant recommendation.  True and correct copies

of the recommendation submission confirmation, the cover letter, and the $30,000 remittance check to Arizona Rangers are collectively attached as **Exhibit 4**.

53.    There were no written requirements that the funds be used for any particular purchase or category of items.

54.    Arizona Rangers spent the $30,000 donation that was received on or about July 31, 2017 in accordance with the terms of the grant/donation.

*Grant/Donation 5*

55.    On or about August 22, 2017, Winthrop, as the donor advisor for Veritas Endowment Fund, submitted an online grant recommendation to American Endowment Foundation recommending that Arizona Rangers be awarded $20,000.

56.    For the 500-character max statement to be included in the grant letter accompanying the $20,000, Winthrop inputted the following: "This is per your request for East Valley Troop search and rescue equipment to be purchased at Troop discretion."

57.    On or about September 5, 2017, American Endowment Foundation issued check No. 125582 to the Arizona Rangers with a cover letter dated September 5, 2017 that repeated verbatim the language Winthrop included in his online grant recommendation.  True and correct copies of the recommendation submission confirmation, the cover letter, and the $20,000 remittance check to Arizona Rangers are collectively attached as **Exhibit 5**.

58.    $19,854.65 was spent from this grant/donation

59.    The $19,854.65 in purchases were made exclusively on the American Express card by Winthrop.

60.    At least $8,798.72 of the $20,000 grant/donation was used by Winthrop for fundraising activities.

61.    The remaining balance is in the possession of the organization and Arizona Rangers intends to use the funds consistent with the stated restrictions.

62.    There were no written requirements in the grant/donation letter that the funds be expended in a certain time frame.

63.    Arizona Rangers spent the $20,000 donation that was received on or about September 5, 2017 in accordance with the terms of the grant/donation.

### Grant/Donation 6

64.    On or about August 16, 2017, Winthrop, as the donor advisor for Veritas Endowment Fund, submitted an online grant recommendation to American Endowment Foundation recommending that Arizona Rangers be awarded $30,000.

65.    In the grant recommendation submission, Winthrop requested that the $30,000 grant be made to Arizona Rangers anonymously.

66.    For the 500-character max statement to be included in the grant letter accompanying the $30,000, Winthrop inputted the following: "With thanks to Drs. Goodman and Hallert and at their request to fund East Valley Troop radio communications."

67.    On or about September 1, 2017, American Endowment Foundation issued a check for the $30,000.  That check was never received by Arizona Rangers.

68.    On or about October 3, 2017, American Endowment Foundation issued replacement check No. 127915 to the Arizona Rangers with a cover letter dated October 3, 2017 that repeated verbatim the language Winthrop included in his online grant recommendation.  True and correct copies of the recommendation submission confirmation, the cover letter, and the $30,000 remittance check to Arizona Rangers are collectively attached as **Exhibit 6**.

69.    $3,534.94 was spent from this grant/donation

70.    The $3,534.94 in purchases were made exclusively on the American Express card by Winthrop.

71.    The remaining balance is in the possession of the organization and Arizona Rangers intends to use the funds consistent with the stated restrictions.

72.    There were no stated requirements in the grant/donation letter that the funds be expended in a certain time frame.

73.    Arizona Rangers spent the $30,000 donation that was received on or about October 3, 2017 in accordance with the terms of the grant/donation.

*Development Committee*

74.     On or about June 24, 2017, Arizona Rangers created an ad hoc Development Committee, and on or about said date, Winthrop was appointed to that ad hoc Committee.

75.     The ad hoc Development Committee was responsible, in part, for raising funds for the Arizona Rangers.

76.     The Development Committee did not review or approve any of the grant recommendations before Winthrop submitted the online grant recommendations to American Endowment Foundation.

77.     The Board of Directors for the Arizona Rangers did not review or approve any of the grant recommendations before Winthrop submitted the online grant recommendations to American Endowment Foundation.

*Use of the Funds*

78.     The letters from American Endowment Foundation contained the only restrictions on the Arizona Rangers' use of the funds.

79.     Wine Education Council obtained an assignment of the American Endowment Foundation's "rights to enforce the terms" of the six grants/donations, effective April 1, 2019.

80.     As successor in interest, Wine Education Council cannot now rewrite the terms of the six grants/donations.

81.     The written terms of American Endowment Foundation's grant/donation letters did not require Arizona Rangers to provide proof of its use of funds for specific purchases attributable to any of the donations.

82.     The written terms of American Endowment Foundation's grant/donation letters did not require Arizona Rangers to maintain an inventory or other specific control mechanism.

83.     The written terms of American Endowment Foundation's grant/donation letters did not require Arizona Rangers to segregate the funds.

84.     The funds were all deposited in the same account.  All six grant/donation checks were deposited into a Chase Bank account ending 3268 held by "Arizona Rangers

Company 16", the checking account for Arizona Rangers - East Valley Company.

85.     Arizona Rangers authorized Winthrop to spend the grant/donation funds on its behalf in accordance with the grant/donation letters.

86.     Winthrop accepted the authority from Arizona Rangers to spend the grant/donation funds on its behalf in accordance with the grant/donation letters.

87.     Unbeknownst to Arizona Rangers, in or around July 2017, Winthrop applied for and obtained an auxiliary American Express card ending 8-11004 under the Arizona Rangers' name; that credit card was linked to his personal account.

88.     The credit card statements were mailed to Winthrop's residence at 7500 E. Boulders Pkwy, Unit 51, Scottsdale, Arizona 85266.

89.     Winthrop was the only member of the Arizona Rangers that used the American Express card ending 8-11004 on behalf of the Arizona Rangers, which he used to make purchases pursuant to the grant/donation letters.

90.     Once incurred, the American Express account charges were then paid through the Arizona Rangers - East Valley Company Chase Bank account, via an auto-bill pay feature.

91.     Between July 2017 and December 2017, Winthrop charged $70,807.55 to that American Express card he opened under the Arizona Rangers' name for dozens of the purchases summarized above as the authorized agent of Arizona Rangers.  The American Express card statements are collectively attached hereto as **Exhibit 7**.

92.     Other expenditures were made and paid for with the grants/donations between December 2016 and December 2017 via a Chase credit card ($41,426.13) and checks were also written on the East Valley Company Chase Bank account ($26,200.62) for fundraising, operating expenses, donations, equipment, supplies, and training.

93.     Winthrop controlled how the vast majority of the funds were used.

94.     All of the expenditures of grant funds were either directed by Winthrop or voted on by the East Valley Company with Winthrop's input and approval.

95.     Once the Board of Directors for Arizona Rangers learned about the American Express card and raised concerns about how the donations/grants were procured and spent, the Board of Directors for Arizona Rangers asked two of its members, Major Steve Lant and Lt. Steve Koons, to review the grants/donations received by the East Valley Company from American Endowment Foundation during 2016 and 2017.

96.     The April 25, 2018 report of Lant and Koons prepared based on their review of the grants/donations included, among other things, a spreadsheet of the expenditures and the items in the possession of Winthrop.  A complete copy of the April 25, 2018 report is attached hereto as **Exhibit 8**.

97.     Winthrop reviewed the spreadsheet of the expenditures attached as part of the April 25, 2018 report of Lant and Koons.

98.     At all relevant times, Winthrop was an authorized representative of Wine Education Council.  *See* **Exhibit 9**.

99.     Wine Education Council has agreed to indemnify Winthrop for Arizona Rangers' Third-Party claims against Winthrop.

100.     Winthrop, as an authorized representative of Wine Education Council, ratified and approved all expenditures of grant/donation funds, all of which were made at his direction and/or recommendation.

101.     Winthrop, using the American Express card, personally spent $23,301.30 for business/relationship development dinners and travel (including a private round trip flight from Phoenix, AZ to Van Nuys, CA, and back on a King Air 200), which he stated was to secure resources and additional donors for the Arizona Rangers and permissible under the grants/donations. Those expenditures include:

| Date | Vendor | Description | Amount |
|------|--------|-------------|--------|
| 8/12/2017 | Spago | Donor Dinner -- TD | 566.83 |
| 8/15/2017 | Spago | Donor Dinner -- GH and MG | 1,679.84 |
| 8/17/2017 | Parkway Grille | Donor Lunch -- SA | 97.31 |
| 8/20/2017 | Capital Grill | Food | 46.87 |

| 8/31/2017 | Mastros | Development Dinner - Fail | 286.41 |
|---|---|---|---|
| 9/5/2017 | Capital Grill | Meet with professional investigator re background check bid - Dutch | 69.01 |
| 9/7/2017 | Mastros | Recruitment dinner -- WR and HK | 622.48 |
| 9/16/2017 | Capital Grill | Business Development (Winthrop); Food/Beverage | 200.85 |
| 9/20/2017 | Scottsdale Gun Club | Business Development (Winthrop) & Qual. | 538.82 |
| 9/26/2017 | Cutter Flight Management | Business Development; Round trip flight from PHX to LA to meet Donors | 9,214.90 |
| 9/30/2017 | GOSQ.COM Rod Chambers | Service: Airport transfer from Van Nuys to Hotel | 150.00 |
| 9/30/2017 | Spago Restr. | Business Development (Winthrop); Dinner | 1,342.79 |
| 10/1/2017 | Langham Hotel | Business Development Trip. (Room) | 1,012.56 |
| 10/1/2017 | Langham Hotel | Business Development Trip. (Room) | 1,043.21 |
| 10/1/2017 | Langham Hotel | Business Development Trip. (Room) + transport | 1,639.56 |
| 10/1/2017 | Patina Restr. | Business Development (Winthrop); Dinner | 3,760.60 |
| 10/24/2017 | Maestro's Restr. | Business Development (Winthrop); Dinner | 1,029.06 |
| | | | **$23,301.10** |

102.    After the Board ordered that the American Express card be closed and insisted that future grant procurement follow certain procedures, Winthrop decided to withdraw from the Arizona Rangers and demanded reimbursement of the $175,000 and/or the turnover of the purchased supplies/equipment to Wine Education Council.

103.    Third Party Plaintiff is informed, believes and therefore alleges that Winthrop turned over to Wine Education Council, third parties, and/or has retained certain items purchased or paid for with funds provided through the grants/donations in its possession, custody and/or control.

104.    Specifically, Wine Education Council, on or about January 10, 2020, admitted that it had the following items purchased or paid for with funds provided through the grants/donations to Arizona Rangers in its possession, custody and control:

| Quantity | Inventory with WEC |
|---|---|
| 1 | sample ranger hat |
| 1 | 2016 manufactured thermal imager with 17 hours logged with logbook with batteries removed in manufacturer case |
| 1 | body armor manufactured in 2016 due to expire in 2021 |
| 1 | helmet |
| 6 | sample ranger ID cards |
| 1 | 2017 Taser with two practice units, due to expire in 2022, in packaging unused |
| 1 | hydration pack |
| 2 | ranger patches |
| 1 | Surefire Flashlight |
| 1 | Cold Case Homicide Investigation (book) |

105.    Third Party Plaintiff is informed, believes and therefore alleges that the items described in Paragraph 104 were provided to Wine Education Council by Winthrop or at his direction.

106.    Wine Education Council, on or about January 10, 2020, also admitted that a "non-party Rangers group that is still supported, at least nominally, by WEC" may have the following items purchased or paid for with funds provided through the grants/donations to Arizona Rangers in its possession, custody and control:

| Quantity | Inventory with Non-Party Group that WEC Supports |
|---|---|
| 4 | IFAKs |
| 3 | IIA vests |
| 3 | Iridium 9575 |
| 3 | light patrol bags |
| 3 | camelback hydration packs |

| 11 | badge wallets |
|----|---------------|
| 11 | Associate Rangers Badges |
| 1  | Leatherman |
| 7  | Surefire Flashlights |
| 6  | Ranger hats |

107.    Third Party Plaintiff is informed, believes and therefore alleges that the items described in Paragraph 106 are either in the possession of the Winthrop or provided to "non-party Rangers group" by Winthrop or others associated with him.

108.    Plaintiff, Wine Education Council, alleges in its underlying Complaint (*see, e.g.,* ¶¶ 23-24, 30, 38, 44, 47) that some or all of the grant money the Arizona Rangers received through the six grants were improperly spent in a manner which violates the terms of the specific grants or used "outside of the stated conditions found within the grant letters."

109.    Defendant/Third Party Plaintiff has denied and continues to deny that funds were in fact spent in violation of the terms of any of the grants.  If, however, it is determined that Defendant/Third Party Plaintiff is in fact liable to Plaintiff based on the misuse of any of the funds in question.  Third Party Plaintiff is informed, believes and therefore alleges it will be because Mr. Winthrop intentionally and/or negligently misappropriated and/or improperly spent funds and/or property belonging to Third Party Plaintiff without its knowledge or authority.

110.    If Defendant/Third Party Plaintiff is determined to be liable to Plaintiff, Third Party Defendant Grant G. Winthrop will be liable to Third Party Plaintiff for indemnity.

## COUNT ONE
### (Agency/Breach of Fiduciary Duty)

111.    Third Party Plaintiff incorporates the foregoing allegations by this reference.

112.    Third Party Defendant acted as Arizona Rangers' agent in making the above described purchases with grant/donation funds on Arizona Rangers' behalf and taking possession and control of the purchased items.

113.    As its agent, Winthrop owed a duty of loyalty to Arizona Rangers and a duty to act with the care, competence, and diligence normally exercised by agents in similar circumstances.

114.    Winthrop took the Ranger Oath of Allegiance when he became a probationary Ranger in 2016.

115.    Winthrop swore that he would "support and uphold the Constitution of the United States of America, the Laws of the State of Arizona, and the bylaws of the Arizona Rangers, according to the best of [his] abilities . . . ."

116.    Winthrop also agreed to comply with the Rules and Regulations of the Arizona Rangers.

117.    "All assets (i.e., monies, property, supplies, equipment and records) held at with the Company level or Headquarters are the property of the Arizona Rangers Corporation." Rules and Regulations § VI(A).

118.    As the April 25, 2018 report reflects, Winthrop assumed responsibility for the spending of the grant/donation funds.

119.    Winthrop, an attorney with business acumen, represented, without limitation, that he possessed a heightened knowledge of fundraising and grant writing, that he understood what the donor(s) required from the respective grants/donations, and that he had access to potential donors, which he would use to increase fundraising for Arizona Rangers.

120.    Arizona Rangers was not as sophisticated as Winthrop in the area of fundraising and grant writing.

121.    Relying on his representations, Arizona Rangers placed trust and confidence in Winthrop to implement the grant expenditures in accordance to the grant/donation letters.

122.    Winthrop was granted authority to make purchases with the funds designated as funds for the "Troop".

123.    Winthrop agreed to use the donation/grant funds received by Arizona Rangers consistent with the respective grant/donation letters and to hold the property purchased in trust for Arizona Rangers.

124.    As an Arizona Ranger entrusted with assets belonging to Arizona Rangers, Winthrop had an obligation to "implement reasonable safeguards, including adequate physical security and a system of books and records.  Rules and Regulations § VI(A).

125.    As an Arizona Ranger entrusted with assets belonging to Arizona Rangers, Winthrop also had an obligation to "surrender all Arizona Rangers assets along with a proper accounting when leaving office or when called upon to do so by vote of the Board of Directors or Executive Board at the Company level."  Rules and Regulations § VI(A).

126.    Winthrop was responsible for documenting the purchases.

127.    Winthrop was responsible for maintaining the reasonable safeguards and inventory controls.

128.    In taking custody and control of Arizona Rangers' assets and undertaking the responsibility to use the donation/grant funds consistent with the respective grant/donation letters, Third Party Defendant, as its agent, assumed a fiduciary duty to the Arizona Rangers.

129.    An agent must "act for the benefit of" the principal in "matters within the scope of the relationship" and "act with the highest degree of honesty, loyalty, good faith and fair dealing."

130.    To the extent it is determined Arizona Rangers is liable to Plaintiff, it will because Winthrop breached his fiduciary duty by failing to exercise reasonable care to comply with the terms of the grants/donations and/or to maintain control of the assets entrusted to his custody and control.

131.    In the event it is determined that Arizona Rangers is liable to Plaintiff, Third Party Defendant will have proximately caused Arizona Rangers damages in an amount equal to the amount of that liability together with its attorneys' fees and taxable costs incurred herein  Third Party Defendant will be liable to indemnify Arizona Rangers against that liability because he will have breached his fiduciary duty with regard to the use of the Arizona Rangers' funds entrusted to his care and control.

## COUNT TWO
### (Negligence)

132.    Third Party Plaintiff incorporates the foregoing allegations by this reference.

133.    To the extent the grants/donations placed restrictions on the use of the funds and/or specific requirements for the maintenance of the items purchased with the grant/donation funds, Third Party Defendant, as an agent of Arizona Rangers, owed a duty to Arizona Rangers to comply with those restrictions.

134.    By accepting responsibility to make purchases in accordance with the terms of the grants/donations and to take possession of the items purchased with the grant/donation funds, Winthrop assumed a common law duty to Arizona Rangers as his principal.

135.    To the extent Arizona Rangers is liable to Plaintiff, it will be because Winthrop breached that duty and fell below the standard of reasonable care by failing to comply with the terms of the grants/donations and/or failing to maintain proper controls.

136.    To the extent it is determined that Arizona Rangers violated any of the grant/donation restrictions, it will be because Third Party Defendant breached his duty to the Arizona Rangers to act reasonably and comply with those restrictions.

137.    To the extent Arizona Rangers is found liable to Plaintiff, Third Party Defendant's negligent acts will have proximately caused the Arizona Rangers damages equal to the amount of that liability, together with its attorneys' fees and taxable costs incurred herein.

## COUNT THREE
### (Common Law Indemnity)

138.    Third Party Plaintiff incorporates the foregoing allegations by this reference.

139.    Arizona Rangers reasonably relied on the representations of Winthrop, the party who was not only recommended the grants/donations and their terms but also was the authorized representative of Wine Education Council, to make the purchases in accordance compliance with the requirements of the applicable grants/donations and to maintain the equipment in accordance with Arizona Rangers' Rules and Regulations.

140.    To the extent Arizona Rangers is found to be liable to Plaintiff for violation of restrictions in the grants, then pursuant to the facts of this case and the nature of the parties' relationship, Arizona Rangers will be entitled to common law indemnity from Third Party Defendant for any sums Arizona Rangers are required to pay to Plaintiff as well as their attorneys' fees and taxable costs.

WHEREFORE, Defendant/Third Party Plaintiff Arizona Rangers, seeks the following relief from Third Party Defendant Grant G. Winthrop:

1.    Compensatory damages equal to the amount of any damages award to Plaintiff against Defendant/Third Party Plaintiff, together with the attorney fees and taxable costs Defendant/Third Party Plaintiff incurs in defending against Plaintiff's claims;

2.    Post-judgment interest at the statutory rate on the foregoing amounts; and

3.    For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 26th day of June 2020.

SIMMONS & GOTTFRIED, PLLC
Jared C. Simmons
8160 E. Butherus Drive, Suite 7
Scottsdale, Arizona 85260

-AND-

BALL, SANTIN & MCLERAN, PLC

By: /s/Jeffrey Messing
Jeffrey Messing
2999 North 44th Street, Suite 500
Phoenix, Arizona 85018
*Attorneys for Defendant / Third Party*
*Plaintiff Arizona Rangers*