**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wine Education Council, | No. CV-19-02235-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Rangers, | |
| Defendant. | |

Pending before the Court is Third-Party Defendant Grant Winthrop's ("Mr. Winthrop") Motion to Dismiss Arizona Rangers' ("AZR") Amended Third Party Compliant, (Doc. 119), and responsive motions. (Docs. 124, 128.) Also pending before the Court is Third-Party Plaintiff AZR's Motion to Dismiss Mr. Winthrop's Amended Counterclaims, (Doc 147), and responsive motions. (Docs. 154, 156.)

## I.      Factual Background

### A.  Underlying Case

These motions relate to an underlying case in which the Wine Education Counsel ("WEC") brought suit against the Arizona Rangers. WEC is an educational organization that promotes the development and effectiveness of viticulture professionals. (Doc. 1 at 2.) WEC has also provided charitable grants to law enforcement groups. (*Id*.) WEC's underlying complaint in this case alleges that it was named the "backup beneficiary" of certain grants to AZR in the event that AZR either ceased to exist or failed to use the grant funds consistent with each grant's terms. (*Id*.) According to WEC's complaint, its "backup

beneficiary" status extended to six grants made to AZR between November 30, 2016 and October 3, 2017. (*Id*.) WEC alleged that each of these grants was made after the East Valley Company of AZR affirmatively requested the donations "subject to conditions regarding the purpose and intended use for the funds." (*Id*.) According to WEC, AZR has since failed to use the grants according to their terms, which allows WEC to assert their claim as the backup beneficiary. (*Id*. at 3.) WEC brings three claims against AZR. WEC's first claim, breach of contract, alleges the grants imposed a contractual duty on AZR to use the grant funds for specified purposes and that AZR has failed this duty. (*Id*. at 4.) WEC's second claim, breach of the covenant of good faith and fair dealing, alleges the grant contracts imposed a duty of good faith and fair dealing and that AZR violated that duty by not using the funds for approved purposes. (*Id*. at 4-5.) WEC's third claim, unjust enrichment, is offered in the alternative and asserts that WEC did not agree to supply AZR funds for any purpose other than those stated in the grant letters, and that to the extent AZR has obtained and used the funds for other purposes AZR has been unjustly enriched. (Doc. 5-6.)

**B. Factual Allegations of AZR's Third-Party Complaint**

AZR answered WEC's complaint denying any wrongdoing or impermissible use of the grant funds. However, AZR also asserted a contingent Third-Party Complaint ("TPC") against Grant Winthrop ("Mr. Winthrop"), a former associate member of AZR. (Doc. 109 at 7.) To become an associate member, candidates must pass all required background checks, complete a minimum ninety (90) day probationary period and take the Ranger Oath of Allegiance and otherwise agree to obey the AZR bylaws, rules, and regulations. (*Id*. at 7-8, 21-22.) Members who have met the requirements for admission to AZR but who are still in their probationary period are known as "probationary rangers."  Members who have completed their "probationary period" who wish to assist AZR in roles other than that of an active ranger and known as "associate rangers." (*Id*. at 8.) AZR alleges that Mr. Winthrop applied for membership with AZR and was acting as a probationary ranger by December 2016. (*Id*.) Mr. Winthrop completed his probationary period and was formally sworn in as an associate ranger on March 7, 2020. (*Id*.)

According to AZR, Mr. Winthrop's involvement with the organization mostly centered around AZR's fundraising efforts and the management of AZR's grant funds. AZR alleges that while both a probationary and an associate member, Mr. Winthrop solicited donations and grant funds on its behalf. (*Id*.) AZR alleges Mr. Winthrop's role in the acquisition and distribution of grant funding permits it to maintain a third-party action against him. AZR claims this to be the case because the underlying action "concerns the use of six donations totaling $175,000 that Winthrop solicited on behalf of [AZR] from American Endowment Fund [sic] between November 2016 and September 2017." (*Id*. at 8.) AZR alleges not only did Mr. Winthrop help it write the grants, but he was involved on both sides of the donation, acting as a donor advisor for the endowment fund responsible for giving AZR the funds. (*Id*. at 8-9.)

AZR also alleges Mr. Winthrop played a key role in the distribution of the grant funds. AZR states that on or around June 24, 2017 it created an ad hoc development committee responsible for fundraising and that Mr. Winthrop was appointed to that committee. (*Id*. at 15.) AZR also alleges that each of the grants at issue in WEC's underlying complaint were deposited into the same AZR Chase Bank checking account ("The Chase Account"), that AZR gave Mr. Winthrop the authority to spend the grant funds on its behalf "in accordance with the grant/donation letters," and that Mr. Winthrop accepted this authority. (*Id*. at 16-17.) AZR places special significance on Mr. Winthrop's role in spending the funds due to his involvement with WEC, stating his approval without comment of the funds used "ratified and approved all expenditures." (*Id*.)

Apart from his seat on the ad hoc committee, AZR also alleges that Mr. Winthrop personally undertook to spend the grant funds. (*Id*. at 16-17.) It states that "[u]nbeknownst to Arizona Rangers, in or around July 2017, Winthrop applied for and obtained an auxiliary American Express card ("the Amex card") …under [AZR's] name…linked to his personal account." (*Id*. at 16.) Mr. Winthrop was the only member of AZR who used the Amex card, and he used the card to make purchases pursuant to the grants. (*Id*.) These purchases with the Amex card were then reimbursed via an auto payment feature of The Chase Account.

(*Id*.) Using the Amex card, Mr. Winthrop made "dozens of purchases" totaling more than $70,000.00. (*Id*.) These purchases were in addition to another $67,626.75 of the grant funds spent from The Chase Account via check or Chase credit card. (*Id*.) AZR alleges that "[Mr.] Winthrop controlled how the vast majority of the funds were used[,]" and that "all expenditures of grant funds were either directed by [Mr.] Winthrop or voted on…with [his] input and approval." (*Id*.)

Of the grant money given to AZR, Mr. Winthrop used the Amex card to spend $23,301.30 on "business/relationship development dinners and travel" for the purpose of securing resources and additional donors for AZR. Eventually, AZR leadership learned of Mr. Winthrop's Amex card, and raised concerns about oversight in grant fund spending. (*Id*. at 17.) AZR undertook an investigation and review of grants received and funds spent. While the investigation did not accuse Mr. Winthrop of any wrongdoing, AZR did order Mr. Winthrop's Amex card in AZR's name to be closed and required future grant procurement to follow certain procedures. (*Id*. at 18.) After AZR reached this determination Mr. Winthrop "decided to withdraw from [AZR] and demanded reimbursement of the $175,000 and/or the turnover of the purchased supplies/equipment to [WEC]." (*Id*.)

While AZR still maintains it did not misuse any of the grant funds subject to WEC's complaint, it alleges that in the event AZR is determined to be liable for misuse of the funds "it will be because Mr. Winthrop intentionally and/or negligently misappropriated and/or improperly spent funds and/or property belonging to [AZR] without its knowledge or authority." (*Id*. at 20.) As such AZR brings three claims against Mr. Winthrop as a third-party defendant in this action. (*Id*.) AZR alleges that to the extent it is determined to be liable to WEC, it will either be (1) due to Mr. Winthrop's breach of his fiduciary duty as AZR's agent or (2) due to his negligence in his role in the management of AZR funds. (*Id*. at 20-23.) AZR also asserts Mr. Winthrop will be liable under the theory of common law indemnity. (*Id*. at 23-24.)

Mr. Winthrop filed a Motion to Dismiss AZR's TPC under Rule 12(b)(6). (Doc. 119.) There, he argued that both AZR's negligence and breach of fiduciary duty claims

must be dismissed under Rule 14 of the Federal Rules of Civil Procedure, that AZR had failed to properly plead any agency relationship or any other relationship giving rise to fiduciary duties, that AZR had not pled facts sufficient to establish any duty supporting its negligence claim, and that AZR had failed to plead facts necessary to establish a common law indemnity claim. (*Id.*)  AZR responded arguing Rule 14 allows it to assert its claims for breach of fiduciary duty and negligence when a third-party defendant's liability is contingent on the outcome of an underlying case and that the facts pled in AZR's TPC adequately show a breach of Mr. Winthrop's fiduciary duties and duty of care to AZR. (Doc. 124 at 4.)

### C. Factual Allegations of Mr. Winthrop's Counterclaims

Apart from filing a Motion to Dismiss AZR's TPC, Mr. Winthrop has also subsequently filed counterclaims against AZR asserting that AZR is liable to Mr. Winthrop under theories of breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. (Doc. 132 at 9-11.) Mr. Winthrop's counterclaims allege that he became a probationary member of AZR in December 2016 and became an associate member of AZR on or around March 7, 2017. (*Id*. at 2.) Mr. Winthrop alleges these were both "volunteer" positions but admits that he was expected to "understand and uphold the [AZR] bylaws and be familiar with and strive to abide by [AZR] Rules and Regulations." (*Id*. at 2-3.)

Mr. Winthrop discusses AZR's rules and regulations in some detail. He alleges the bylaws provide a board of directors for oversight and to "correct any potentially damaging situation[s]," that the rules require the organization "implement reasonable safeguards, including adequate physical security and a system of books and records" to protect ranger property, and that in return individual rangers must adhere to codes of conduct and have a duty to "safeguard all property…in their possession." (*Id*. at 3.) By virtue of the agreements and duties established by AZR's bylaws and rules, Mr. Winthrop asserts, for the purposes of his counterclaim, that "all members of [AZR], while acting within the scope of their relationship, serve as agents of [AZR]." (*Id*.) He further alleges that, "As principle, [AZR]

has a duty to deal with its agents…fairly and in good faith." (*Id.*) Mr. Winthrop believes this duty means AZR "must not harm its members' reputation nor charge its members with seriously improper conduct, or otherwise insult its members." (*Id.*) Further he alleges that AZR's duty of good faith requires it "refrain from engaging in conduct that would foreseeably result in loss for its members, when its members' own conduct is without fault." (*Id.* at 4.)

Mr. Winthrop admits that he served as a member of the AZR development committee responsible for raising funds and for overseeing the expenditure of funds. (*Id.*) He alleges that it was the committee that requested the grants and "charitable donations subject to specific conditions," and that the committee had a duty to implement reasonable safeguards over the expenses. (*Id.*) Mr. Winthrop further notes that the grant requests bore the signature of two other rangers, Anthony Ramirez and Captain Jeff East, and that Mr. Winthrop did not himself sign the grant requests. (*Id.* at 5.) It was by these grant requests that AZR obtained the $175,000.00 of funding at issue in WEC's underlying case. (*Id.*) Mr. Winthrop alleges the committee failed its duty to implement reasonable safeguards on the expense of grant funds. (*Id.*)

Mr. Winthrop admits to spending funds as the agent of AZR, but states that he did so pursuant to AZR's authority to "expend monies for the broad and general purposes of reasonably benefitting [AZR]." (*Id.* at 6.) He states that as a member of AZR he acted according to and in reliance on broad and general guidance from his superiors in the organization. (*Id.*) Mr. Winthrop states that he never had access himself to The Chase Account, but instead made purchases using the Amex card in his name. (*Id.*) Mr. Winthrop alleges he did so pursuant to instructions from Captain Jeff East of AZR. (*Id.*) Mr. Winthrop further alleges that AZR understood he was using a personal Amex card to make purchases for AZR and that AZR enabled the auto-pay feature of The Chase Account to reimburse these purchases. (*Id.*) He also states that before each monthly meeting with AZR he provided monthly bank statements for AZR to review and approve purchases. (*Id.*) Mr. Winthrop alleges that when making purchases with his personal Amex card he was acting

under the instruction and with the authority of AZR until AZR instructed him to stop doing so on November 23, 2017. (*Id*. at 7.) Mr. Winthrop further alleges that after AZR instructed him to stop making purchases, "certain expenditures" he made with the card we not reimbursed. (*Id*.)

Mr. Winthrop notes that AZR conducted an internal audit concerning the expenditure of grant funds by the committee. (*Id*.) The two Rangers in charge of the audit were the same Rangers who reviewed the grants at issue in WEC's case. (*Id*. at 8.) At the conclusion of the audit, AZR issued a report in which it found "'(1) [n]o evidence was found that would indicate the existence of a misappropriation of any Arizona Rangers assets;' (2) '[a]ll fund expenditures have been used to benefit the Arizona Rangers …;' and (3) no 'potential conflicts of interest resulted in any bad conduct.'" (*Id*.) Thus, Mr. Winthrop alleges AZR itself has cleared him of any wrongdoing. (*Id*.) In light of the report, Mr. Winthrop takes issue with AZR's attempt to allege in this case that Mr. Winthrop acting as its agent "intentionally and/or negligently" misappropriated or spent grant funds. (*Id*.) Mr. Winthrop further alleges that the allegations and related claims made by AZR have harmed Mr. Winthrop's professional reputation and that he is unable to obtain the licensure to practice as an attorney "due to the pending nature of this action." (*Id*.)

Mr. Winthrop seeks recovery under breach of contract asserting that he and AZR were parties to an implied contract established under the AZR rules and bylaws, that AZR breached this contract both by failing to put safeguards in place over the management of grant funds and by failing to reimburse his personal expenditures with the Amex card, and that as a result Mr. Winthrop was damaged in excess of $75,000.00. (*Id*. at 9.) Mr. Winthrop also seeks recovery for AZR's alleged violation of its duty of good faith and fair dealing. He asserts that AZR owed him a duty of good faith under their implied contract and agency relationship and that AZR breached that duty by failing to put safeguards in place over the grant funds and by accusing him of wrongdoing, insulting him, and seeking indemnification from him. (*Id*. at 10.) Mr. Winthrop alleges such actions resulted in reasonably foreseeable harm, and that he was harmed by the impossibility of obtaining

licensure as an attorney "during the pendency of this action." (*Id*.) Finally, Mr. Winthrop brings a claim of unjust enrichment alleging that AZR failed to reimburse him for expenditures made on AZR's behalf, and that as a result, he was impoverished and AZR was enriched. (*Id*. at 11.)

AZR responded to Mr. Winthrop's Counterclaim with its own motion to dismiss under Rule 12(b)(6). (Doc. 147.) In the motion, AZR requests the Court to find documents associated with Mr. Winthrop's Amex card and with The Chase Account "incorporated by reference" into Mr. Winthrop's counterclaims. (*Id*. at 3.) AZR argues that to the extent Mr. Winthrop alleges causes of action based on AZR's failure to implement safeguards, he has misquoted AZR bylaws that expressly gave him the duty to implement safeguards. (*Id*. at 7.) AZR further argues that it does not owe a duty of good faith and fair dealing to Mr. Winthrop as his principle and finally, that to the extent Mr. Winthrop asserts reputational damages his claim is barred by the litigation privilege. (*Id*. at 7-9.)

Mr. Winthrop answered AZR's motion, (Doc 154.), asserting it should be struck on procedural grounds under Local Rule 12.1(c) and that even if the Court declined to strike AZR's motion, any argument regarding his breach of contract and unjust enrichment claims was waived under Federal Rule of Civil Procedure 12(g). (*Id*. at 3-6.) Mr. Winthrop also argued "incorporation by reference" of the Amex card and bank statements was not warranted in this case. (*Id*. at 7-8.) Mr. Winthrop further alleged his "breach of good faith and fair dealing" claim is based on implied contract of the parties' agency relationship. (*Id*. at 10.) Finally, Winthrop argued that the litigation privilege does not apply to contract claims and that regardless his claim was not based on AZR's filing of the third party claim alone. (*Id*. at 11.)

## II.    Standard of Review

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," as "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 555 n.3 (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1202, at 94–95 (3d ed. 2004)). Thus, Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as

1    factual allegations are not given a presumption of truthfulness, and "conclusory allegations
2    of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto*
3    *v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence
4    outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss.  *See United States v.*
5    *Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—
6    documents attached to the complaint, documents incorporated by reference in the
7    complaint, or matters of judicial notice—without converting the motion to dismiss into a
8    motion for summary judgment." *Id.* at 908.

9    **III.    Analysis of Mr. Winthrop's Motion to Dismiss**

10   **A.  Ripeness under Rule 14**

11       Mr. Winthrop opens his motion by arguing that neither AZR's negligence nor its
12   breach of fiduciary duty claim have accrued and as such may not be brought. Rule 14
13   allows "[a] defending party" to "serve a summons and complaint on a nonparty who is *or*
14   *may be* liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1) (emphasis
15   added). The purpose of Rule 14 is to promote judicial efficiency by eliminating the need
16   of a "defendant to bring a separate action against third individual who *may be* secondarily
17   or derivatively liable to the defendant for all or part of the plaintiff's original claim."
18   *Southwest Admrs., Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986) (emphasis
19   added). Multiple courts have held accrual is not required to bring a claim under Rule 14.
20   *Tormo v. Yormark*, 398 F.Supp. 1159, 1175 n.20 (D.N.J. 1975) (holding a negligence claim
21   was proper under Rule 14(a) and stating, "The fact that Fidelity's right has not yet
22   accrued…does not affect the sufficiency of its third-party complaint"); *Fraley v.*
23   *Worthington*, 64 F.R.D. 726, 728 (D. Wyo. 1974) ("The words 'may be liable' in Rule 14
24   mean that defendant is permitted to join someone against whom a cause of action has not
25   yet accrued, provided that his claim…will accrue when defendant's liability is determined
26   in the main action or plaintiff's claim is satisfied."). In Arizona, a negligence action accrues
27   when a party "is put on reasonable notice to investigate whether the injury is attributable
28   to negligence." *Cervantez v. Graham Cty.*, No. CV-10-0419-TUC-CKJ, 2011 U.S. Dist.

LEXIS 25765, at *14 (D. Ariz. Mar. 10, 2011) (quoting *Walk v. Ring*, 202 Ariz. 310, 316 (2002)). Similarly, under Arizona's rule, a claim for breach of fiduciary duty accrues when "the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underling the cause." *United States ex rel. Scott v. Ariz. Ctr. for Hematology & Oncology PLC*, No. CV16-3703-PHX DGC, 2018 U.S. Dist. LEXIS 175445, at *7 (D. Ariz. Oct. 11, 2018).

Third-party complaints are by their nature brought prior to a definitive finding of liability. The goal of Rule 14 is to get all potential parties in front of the Court participating in the original action. Rule 14 exists to prevent exactly what Winthrop is attempting to make AZR do, namely, litigate the entirety of this action and then bring a separate action against him for his acts once the lawsuit has concluded. As such, the Court believes Mr. Winthrop is incorrect in asserting that claims under Rule 14 may only be brought once AZR's liability to WEC is definitively proven. Even taking at face value Mr. Winthrop's argument that accrual must occur prior to bringing a claim under Rule 14, under Arizona law both claims have accrued. AZR has clearly been put on "reasonable notice to investigate," and indeed, they did investigate the facts underlying this case. Also, the actions of Mr. Winthrop being used to support the claims have already occurred. The injury has at least partially occurred in the form of AZR's "attorney's fees and taxable costs incurred herein," (Doc. 109 at 22), in addition to the contingent injury of any judgement owed to WEC. As such, the argument made by Mr. Winthrop does not bar AZR's claims.

**B. Agency**

Mr. Winthrop alleges that AZR has failed to adequately plead a cause of action for breach of fiduciary duty because it has not established an agency relationship between AZR and himself. As the Arizona Supreme Court has recently explained, an agency relationship is shown by "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Sky Harbor Hotel Props., LLC v. Patel Props., LLC* (*In re Sky Harbor Hotel Props., LLC*), 246 Ariz. 531, 533 (2019) (citing Restatement (Second) of Agency § 1 (Am. Law. Inst. 1958)). An

agent is a fiduciary with regard to matters within the scope of his agency. *Id*. Thus, an agent has a duty of loyalty, a duty of good faith, and a duty of care. *Id*. (citing *Ghiz v. Millett*, 71 Ariz. 4, 8 (1950); *De Santis v. Dixon*, 72 Ariz. 345, 350 (1951); *Master Records, Inc. v. Backman*, 133 Ariz. 494, 497 (1982)). The Arizona Supreme Court has previously stated, "[i]t is the right to control, rather than the actual exercise of control" that is integral to an agency relationship. *Williams v. Wise*, 476 P.2d 145, 148 (Ariz. 1970); *see also Tarron v. Bowen Mach. & Fabricating, Inc.*, 235 P.3d 1030 (2010).

Mr. Winthrop argues AZR has failed to adequately plead an agency relationship between the parties because it has not pled a (1) "manifestation of consent" by AZR for Mr. Winthrop to act on its behalf, (2) the scope of his agency, and (3) a failure by Mr. Winthrop to make reasonable efforts in discharging his duty. Mr. Winthrop further alleges that AZR's TPC actively disproves any agency relationship because AZR states that Mr. Winthrop made unauthorized purchases. However, in light of the Court's obligation to assume all facts and draw all inferences "in favor of the nonmoving party," *Lopez*, 450 F.3d at 448, and to assume that general allegations "embrace whatever specific facts might be necessary to support them," *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994), the Court must disagree with Mr. Winthrop's position.

AZR's factual allegations show a manifestation of consent by the parties. For example, AZR expressly alleges it "authorized Winthrop to spend the [grant funds] on its behalf, in accordance with [the grant terms]." (Doc. 109 at 16.) They further allege that Mr. Winthrop accepted this authority, which is further evidenced by his acceptance of membership on the ad hoc committee in charge of fundraising and spending, and his actual personal spending of the funds. (*Id*.) This and other allegations of the TPC show the scope of Mr. Winthrop's agency included his "fund raising" activities, and his spending of the grant funds. (*Id*. at 15-16.) The factual allegations both expressly and by inference allege that Mr. Winthrop did not use reasonable efforts to spend grant funds in accordance with the grant terms. AZR has alleged that Mr. Winthrop more than any other member knew WEC's expectations regarding use of the funds via his relationship with the donor. (*Id*. at

9.) He then took on a role with AZR that put him in charge of making sure the funds were spent in accordance with those terms. (*Id*. at 15-16.) However even while agreeing to act as a member of the committee and personally overseeing the way the funds were spent, he declined to inform his principle of any potential issue with the allocation of funds.  AZR expressly alleges that any misuse of the funds will be the direct result of Mr. Winthrop's "intentional[]…and/or negligent[]" actions. (*Id*. at 20.) These are just a sample of the allegations brought against Mr. Winthrop in AZR's TPC, and does not even touch on  Mr. Winthrop's personal spending of grant funds, nor allegations that he turned over Ranger property to third parties, or allegations that he retained possession of Ranger property in violation of his duties under the bylaws.(*Id*. 18-20.) Based on these allegations, the Court finds that AZR has adequately pled the existence of an agency relationship between Mr. Winthrop AZR and breach of fiduciary duties created by that relationship.

A new argument in Mr. Winthrop's reply argues AZR cannot allege breach of an agency relationship because AZR explicitly alleges that Mr. Winthrop spent funds without AZR's consent. Mr. Winthrop contends this means AZR did not have the "control" necessary for an agency relationship to exist. However, "[i]t is the right to control, rather than the actual exercise of control, that points to the one having that right as master." *Williams*, 476 P.2d at 148. While AZR claims it did actively control Mr. Winthrop, that does not mean it had no right or power to control the expenditure of grant funds. AZR's control was clearly demonstrated when it "ordered that the [Amex] card be closed and insisted that future grant procurement follow certain procedures." (Doc. 109 at 18.) AZR has adequately alleged the existence of an agency relationship.[1]

### C. Breach of Fiduciary Duty

Mr. Winthrop next argues that "[e]ven if AZR's amended pleading…allege[d] an agency relationship," AZR has failed to state a claim for breach of fiduciary duty. (Doc. 119 at 7.) To properly plead a claim for breach of fiduciary duty a party must show: (1) the

---

[1] Mr. Winthrop himself argues that an agency relationship exists when he defends his breach of good faith and fair dealing claim. (Doc. 154 at 9.)

existence of a fiduciary duty, (2) its breach, and (3) damages resulting from the breach. *See John E. Shaffer Enters. v. City of Yuma*, 183 Ariz. 428, 432 (Ct. App. 1995). An agent is a fiduciary with regard to matters within the scope of his agency. *Id*. Thus, an agent has fiduciary duties of loyalty, good faith, and care to his principle. *Id*. (citing *Ghiz v. Millett*, 71 Ariz. 4, 8 (1950); *De Santis v. Dixon*, 72 Ariz. 345, 350 (1951); *Master Records, Inc. v. Backman*, 133 Ariz. 494, 497 (1982)).

The vast majority of Mr. Winthrop's argument here contends that Mr. Winthrop and AZR did not have the type of relationship that gives fiduciary duties. However, given the Court's decision above it is clear the parties had an agency relationship. This gave Winthrop fiduciary duties of loyalty, good faith, and care to AZR in his actions as an agent. Mr. Winthrop also alleges that AZR cannot show he breached a fiduciary duty since an internal audit cleared him of wrongdoing. While that report may be evidence that Mr. Winthrop did not breach his duty such an argument has nothing to do with the sufficiency of AZR's pleadings on a Rule 12(b)(6) motion. Finally, in a single sentence, Mr. Winthrop states that "AZR alleges at most contingent, and not actual, damages." The Court notes that it is the nature of third-party complaints that damages are "contingent." In the absence of any further explanation of the argument by Mr. Winthrop, the Court will not dismiss the claim on these grounds.

For these reasons the Court finds that AZR has adequately pled an agency relationship with Mr. Winthrop, and adequately pled that Mr. Winthrop breached fiduciary duties created by that relationship. As such Mr. Winthrop's motion to dismiss AZR's claim for breach of fiduciary duty is denied.

### D. Negligence

Mr. Winthrop next argues that AZR cannot state a claim for negligence because he had no relationship that would give him a duty of care to AZR. "To establish a defendant's liability for a negligence claim, a plaintiff must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages." *Quiroz v. Alcoa Inc.*,

243 Ariz. 560, 563-64 (2018). In Arizona, duties may be based on special relationships or on public policy. *Id*. (citing *Guerra v. State*, 237 Ariz. 183, 187 (2015)). Duties based on special relationships arise from several sources, including relationships created by "common law, contracts, or *conduct undertaken by the defendant*." *Id*. (citing Restatement (Second) of Torts §323) (emphasis added). Arizona recognizes that a person who volunteers to undertake an act assumes a duty to act with care. *Lloyd v. State Farm Mut. Auto. Ins. Co.*, 176 Ariz. 247, 250 (Ct. App. 1992) ("When a person voluntarily undertakes an act…that person must perform the assumed duty with due care and is liable for any lack of due care in performing.").

Mr. Winthrop himself cited *Quiroz* both in his motion and at oral argument.  That case clearly contemplates circumstances in which a defendant may create a duty of care by his own conduct, which is exactly the position in which Mr. Winthrop finds himself. Mr. Winthrop volunteered to take on a role controlling the acquisition and expenditure of AZR's donations. He undertook to spend grant funds on AZR's behalf with his personal Amex card. He also undertook custody of certain items purchased by the Rangers with grant funds and distributed those items. He may have been a volunteer member, but that is no reason "why [Mr. Winthrop] should be exempt from what Justice Cardozo once called the universal and 'ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully….'" *Lloyd*, 176 Ariz. at 251 (quoting *Glanzer v. Shepard*, 233 N.Y. 236, 239 (1922)).

The Court finds that AZR adequately pled that Mr. Winthrop assumed a duty to act with due care when he agreed to become a member of AZR, agreed to undertake a position on the committee, and undertook to open an Amex card in his own name to spend money on AZR's behalf. As such, Mr. Winthrop's motion to dismiss AZR's negligence claim is denied.

### E.  Common Law Indemnity

Mr. Winthrop finally contends that AZR has failed to plead a common law indemnity claim because he, as the "indemnity defendant," is not liable to WEC. "[I]n an

action for common law indemnity, the indemnity plaintiff must show, first, it has discharged a legal obligation owed to a third party; second, *the indemnity defendant was also liable to the third party*; and third, as between itself and the defendant, the obligation should have been discharged by the defendant." *MT Builders L.L.C. v. Fisher Roofing, Inc*., 197 P.3d 758, 764 n.2 (Ariz. Ct. App. 2008) (emphasis added). The Supreme Court of Arizona recently clarified the state's common law indemnity jurisprudence, holding that claim is available "only when an indemnity plaintiff subject to derivative or imputed liability *discharges an actual obligation that a culpable indemnity defendant owed to a third party*." *KnightBrook Ins. Co. v. Payless Car Rental Sys.*, 243 Ariz. 424, 424 (2018) (emphasis added). *Knightbrook* considered expanding indemnity remedies to cover situations where an indemnity defendant is "at fault" for damages suffered by a plaintiff, but decided such an expansion was unnecessary because "Arizona law recognizes causes of action in contract and tort for compensation, such as …breach of fiduciary duty…" that adequately addressed those situations. *Id*.

Mr. Winthrop is correct to assert that AZR has failed to state a claim for common law indemnity. No facts alleged in the TPC render Mr. Winthrop independently liable *to WEC* for the causes of action asserted by WEC against AZR. Mr. Winthrop was not a party to the actual grants and there is no assertion that WEC is able to collect from Mr. Winthrop personally for violations of grant terms. As such, any judgement paid by AZR will not "discharges an actual obligation" owed by Mr. Winthrop *to WEC*. Because of this, AZR has failed to state a claim for common law indemnity and Mr. Winthrop's motion to dismiss AZR's common law indemnification claim is granted.

## IV.    Analysis of AZR's Motion to Dismiss

### A.  Procedural Issues

Prior to entertaining the merits of AZR's motion, the Court will dispose of two procedural arguments raised in Mr. Winthrop's response to AZR's Motion to Dismiss. Mr. Winthrop alleges both that the motion must be struck under Local Rule of Civil Procedure 12.1(c) and under Federal Rule of Civil Procedure 12(g).

i.   Local Rule of Civil Procedure 12.1(c)

Mr. Winthrop argues AZR's motion should be struck because AZR failed to abide by Local Rule 12.1(c)'s "meet and confer" requirement. The District of Arizona has promulgated Local Rule of Civil Procedure 12.1(c) in an effort to promote communication and attempted resolution by opposing counsel prior to parties filing motions to dismiss. The rule states that the Court will not consider a motion to dismiss under Rule 12(b)(6) unless the movant includes a certification showing that they have notified the opposing party of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party. LRCiv. 12.1(c). A motion that does not contain the required certification may be stricken summarily. *Id*. However, other cases in this district have held that striking the motion is unnecessary when the movant promptly takes active steps to cure any harm caused by the failure to meet and confer. *Pike v. Arizona*, No. CV-18-01515-PHX-BSB, 2018 U.S. Dist. LEXIS 136908, at *1 n.1 (D. Ariz. Aug. 14, 2018) (considering the motion on the merits after noting "[i]n their reply, Defendants assert that they have since conferred with Plaintiff's counsel and offered to stipulate to an amended complaint that cured the issues…[and] Plaintiff declined to amend the Complaint at that time.").

Here, the Court finds that in light of the active steps taken by AZR to cure any harm caused by the deficiency, striking the motion is unnecessary. AZR admitted their oversight but immediately attempted to correct the deficiency. The very day Mr. Winthrop raised the issue, AZR reached out and offered to withdraw the motion if Mr. Winthrop believed any deficiencies could be cured by amendment. Mr. Winthrop declined this offer. Under such circumstances, the Court finds that striking the motion unmerited.  *Pike*, 2018 U.S. Dist. LEXIS 136908, at *1.

ii.   Federal Rule of Civil Procedure 12(g)

Mr. Winthrop next argues AZR's motion to dismiss should be denied as to his Breach of Contract and Unjust Enrichment claims because AZR failed to raise those claims in its previous motion to dismiss. Federal Rule of Civil Procedure 12(g) states in pertinent

part that, "except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule *must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.*" However, the Ninth Circuit has interpreted this rule in light of its purpose of "avoid[ing] repetitive motion practice, delay, and ambush tactics." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th. Cir. 2017) (quoting *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F.Supp.2d 1164, 1175 (C.D. Cal. 2011)). There, the Court noted the common practice of allowing successive motions where hearing the motion serves the interests of judicial economy, expedites resolution of the case, or narrows the issues involved. *Id*. at 319 (citing *Banko v. Apple, Inc.*, No. 13-02977 RS, 2013 WL 6623913, at *2 (N.D. Cal. Dec. 16, 2013); *Doe v. White*, No. 08-1287, 2010 WL 323510, at *2 (C.D. Ill. Jan. 20, 2010)). The Ninth Circuit recognized the "practical wisdom" of the district court in hearing Rule 12(b)(6) motions where denial under 12(g) will simply kick an issue down the road. *Id*. (quoting *Allstate Ins. Co.* 824 F.Supp.2d 1175 ("[T]he Court would have to address the same questions in several months. That is not the intended effect of Rule 12(g), and the result would be in contradiction to Rule 1's mandate.")).

The Court finds itself in exactly the situation contemplated by *In re Apple*. AZR has brought its Motion to Dismiss under Rule 12(b)(6) for failure to state a claim. As such, even if the Court declined to hear the Motion today, AZR would still be able to bring its arguments at a later date. Fed. R. Civ. P. 12(h)(2). Thus, a strict application of Rule 12(g) here would not promote judicial efficiency or a resolution of the issues, it would simply kick these same issues down the road to be reargued in a few months. As such, in the name of judicial efficiency and the expeditious resolution of this case, the Court will rule on the merits of the motion.

## B. Incorporation by Reference

AZR's argument for dismissing Mr. Winthrop's claims is contingent on the Court finding multiple banking documents "incorporated by reference." AZR argues that both "the American Express credit card statements and the [Chase] bank account statements are

incorporated by reference in…[Mr. Winthrop's] Counterclaim," and as such may be considered by the Court when ruling on this motion. (Doc. 147 at 3.) AZR further argues that those financial statements clearly demonstrate that Mr. Winthrop has been paid in full for his personal expenditures and as such has no damages for his breach of contract and unjust enrichment claims.

The Ninth Circuit has stated that "the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs," but "the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). A party may "seek to incorporate a document into the [pleading]" if the pleading "'refers extensively to the document or the document forms the basis of the…claim.'" *Id.* at 1002. (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). Only extremely rarely will it be proper to incorporate by reference a document not referred to in the complaint. *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) (incorporating a photo where the complaint claimed the photo with a suggestive caption was defamatory but did not include the photo itself)). A document which "merely creates a defense to…well-pled allegations" does not necessarily "form the basis" of a complaint. *Id.* "Otherwise, [parties] could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Id.* (citing *In re Immune Response Sec. Litig.*, 375 F.Supp.2d 983, 995-96 (S.D. Cal. 2005)).

Mr. Winthrop has not relied on, or even referenced, any of the financial statements that AZR requests be incorporated. There are a few paragraphs of his counterclaims in which he generally references the accounts with which the financial statements are associated, but he does not "refer extensively to the document[s]." Neither do the financial statements form "the basis of" Mr. Winthrop's claims. They are merely pieces of evidence that create a defense to his allegations.  As such the Court will not incorporate the financial statements for the purposes of this motion.

The sole argument made by AZR for dismissal of Mr. Winthrop's unjust enrichment claim is that he cannot show damages in light of its proffered documents. Because the Court

1  declines to incorporate the documents by reference, AZRs motion to dismiss the unjust

2  enrichment counterclaim is denied.

3      **C.  Mr. Winthrop's Breach of Contract Claim**

4      "The rights of members of a private organization are governed by the articles of

5  incorporation and by-laws, which constitute a contract between the members and the

6  organization, and among the members themselves." *Rowland v. Union Hills Country Club*,

7  157 Ariz. 301, 304, 757 P.2d 105, 108 (Ct. App. 1988).   Mr. Winthrop bases his breach of

8  contract claim on two theories: (1) AZR failed to implement reasonable safeguards

9  concerning the expense of all grant funds and/or failing to implement other controls and

10 (2) AZR failed to reimburse Mr. Winthrop for expenditures charged to his personal credit

11 card.  AZR argues that to the extent Mr. Winthrop alleged breach of contract based on

12 AZR's failure to implement safeguards, he cannot recover because the duty actually laid

13 with Mr. Winthrop. Indeed, in page three of his counterclaim, Mr. Winthrop explicitly cites

14 AZR Rules and Regulations § VI(A), (Doc. 132 at 3), which states that "[r]angers entrusted

15 with custodianship of Arizona Ranger assets shall implement reasonable safeguards

16 including adequate physical security and a system of books and records."  AZR argues that

17 the Ranger entrusted with custodianship of the grant proceeds was Mr. Winthrop.

18      The Court is bound to construe all factual allegations and draw all inferences in Mr.

19 Winthrop's favor at this stage. Mr. Winthrop alleges that AZR created a development

20 committee "responsible for overseeing the expenditure of funds raised for and received by

21 AZR." (Doc. 132 at 4.) He alleges that even if individual rangers have a duty to safeguard

22 property *in their personal possession*, the committee had a duty to implement safeguards

23 and inventory to account for use of the funds under its general control. The Court is

24 required to take as true Mr. Winthrop's factual assertions that he was not personally or

25 exclusively in charge of the grant funds, and that he only interacted with the funds at the

26 direction of his superiors. Further, the Court will not be influenced by alleged facts outside

27 of the pleading, such as AZR's contentions that Mr. Winthrop had personal possession or

28 custody over ranger property. In light of the motion's procedural posture, the Court finds

that Mr. Winthrop has adequately pled that AZR had a contractual obligation to safeguard property under the organization's control and that its failure to put those controls in place harmed him. As such AZR's motion to dismiss the breach of contract counterclaim is denied.

### D.  Mr. Winthrop's Breach of Good Faith and Fair Dealing

With the exception of his right to be reimbursed, Mr. Winthrop has failed to state a claim for breach of the duty of good faith and fair dealing because he has not alleged that he was denied any "reasonably expected benefit" flowing from his implied contract. Mr. Winthrop is also precluded from recovering any reputational damages because such damages are barred by the litigation privilege.

Arizona law recognizes that "[a]ll contracts as a matter of law include the implied duties of good faith and fair dealing, and contract damages are available for their breach." *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 137 (Ct. App. 2006). A party can breach the implied covenant of good faith and fair dealing without breaching an express provision of the underlying contract. *Id.* (*Beaudry v. Ins. Co. of the W.*, 203 Ariz. 86, 91 (Ct. App. 2002)). The essence of the duty of good faith and fair dealing is that neither party will act to impair the right of the other *to receive the benefits which flow from their agreement* or contractual relationship. *Beaudry*, 203 Ariz. at 91 (citing *Rawlings v. Apodaca*, 151 Ariz. 149, 153-54 (1986)) (emphasis added). The duty of good faith is breached when one party "exercises discretion retained or unforeclosed under a contract in such a way *as to deny the other a reasonably expected benefit of the bargain*." *Id.* (citing *Southwest Sav. & Loan Assoc. v. Sunamp Sys., Inc.*, 172 Ariz. 553, 558, 838 P.2d 1314, 1319 (Ct. App. 1992)) (emphasis added); *accord Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 490 (2002) ("The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement."); *Rawlings*, 151 Ariz. at 155 ("The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their

1  agreement or contractual relationship.").

2      Here, Mr. Winthrop has not alleged any "reasonably expected benefit" to his

3  implied contract with AZR of which he was deprived, except his rights to reimbursement

4  and non-reputational damages. He attempts to allege a breach of the duty of good faith and

5  fair dealing resulting from the allegations in this case.  However, as discussed below, that

6  claim is barred by litigation privilege.

7      Mr. Winthrop alleges that AZR "harmed [his] reputation and made it impossible for

8  [him to] obtain the licensure necessary to practice as an attorney due to the pending nature

9  of this action." (Doc. 132 at 10.) AZR argues that the litigation privilege applies to bar Mr.

10  Winthrop from pursuing damages based on statements made or actions filed with the Court.

11  In Arizona, parties are "'absolutely privileged to publish defamatory matter concerning

12  another' in judicial proceedings so long as the content has some relation to the proceeding."

13  *Taraska v. Brown*, No. 1 CA-CV 18-0714, 2019 Ariz. App. Unpub. LEXIS 1296, at *5-6

14  (Ct. App. Nov. 26, 2019) (citing *Green Acres Tr. v. London*, 141 Ariz. 609, 613 (1984)).

15  "The 'overriding public interest that persons should speak freely and fearlessly in

16  litigation' underlying the absolute litigation privilege entitles defendants to immunity from

17  claims arising out of defamatory statements in a judicial proceeding." *Id*. For these reasons

18  any defamatory statements contained in pleadings are absolutely privileged if they are

19  connected with or have any bearing on or are related to the subject of inquiry." *Id*. Arizona

20  extends the litigation privilege not just to in-court statements and filed pleadings, but also

21  to statements "*relating to pending or proposed litigation*." *Goldman v. Sahl*, 462 P.3d

22  1017, 1017 (Ariz. Ct. App. 2020) ("The conduct of litigation requires more than in-court

23  procedures. An attorney must seek discovery of evidence, interrogate potential witnesses,

24  and often resort to ingenious methods to obtain evidence; thus, he must not be hobbled by

25  the fear of reprisal by actions for defamation.") (emphasis added).

26      In Mr. Winthrop's original motion, he alleged the litigation privilege did not apply

27  to claims brought on the basis of a contract. However, when the Court asked Mr.

28  Winthrop's counsel at oral argument to cite affirmative authority on the point, he instead

clarified that Mr. Winthrop's actual position was that the claim was not based on in-court statements. He stated that instead "the complaint, as far as the covenant of good faith and fair dealing, encompasses all kinds of actions by [AZR], including internal communications and statements out of Court which have harmed Winthrop's ability to transfer his license to Washington State." (Transcript of Oral Arg. P. 13-14.)

Mr. Winthrop's position creates a multitude of issues for his claim. First the alleged harm for which he seeks to recover, transfer of his bar membership to Washington State, does not stem from the denial of a "reasonably expected benefit" under his implied contract with AZR. Second, despite Mr. Winthrop's claims at oral argument, his pleading clearly states that his inability to obtain licensure in Washington State is "due to the pending nature of this action." (Doc. 132 at 10.) Thus, the cause of the harm for which Mr. Winthrop seeks to recover appears directly tied to the existence of the actual court case against him, which is protected by the litigation privilege. Third, even if the Court accepts Mr. Winthrop's sudden assertion at oral argument that his claim is based on out of court communications by AZR, it does not appear to the Court that any such statements plausibly caused the harm alleged. Mr. Winthrop does not plead what the alleged statements made by AZR are, nor how internal communications from AZR's investigation have somehow influenced the Washington State Bar to deny his admission. Mr. Winthrop's claim for a breach of good faith and fair dealing is not dismissed but is limited to non-reputational damages that resulted from the failure to implement safeguard for the proper accounting of funds.  Any alleged reputational damages are precluded.

## V.    Leave to Amend

The Court has dismissed portions of both parties' complaints under Rule 12(b)(6). However, the Court recognizes that "[l]eave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) ("In general, a court should liberally allow a party to amend its pleading."). Accordingly, the parties are granted leave to amend their pleadings to address the deficiencies outlined above.

1

**VI.     Conclusion**

2

Accordingly,

3

     **IT IS ORDERED,** that Mr. Winthrop's Motion to Dismiss, (Doc. 119.), and the

4

Arizona Ranger's Motion to Dismiss (Doc. 147.), are **granted in part and denied in part**

5

**as outlined above.**

6

     **IT IS FURTHER ORDERED** that both the Arizona Rangers and Mr. Winthrop

7

may have leave to amend their respective pleadings (Doc. 109; Doc. 132) and shall refile

8

an amended counterclaim within 14 days of the entry of this order.

9

     Dated this 15th day of December, 2020.

10

11

12

13

Honorable Susan M. Brnovich
United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28