1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Wine Education Council,                    No. CV-19-02235-PHX-SMB

10               Plaintiff,                       **ORDER**

11   v.

12   Arizona Rangers,

13               Defendant.

14

15        Pending before the Court are two motions for summary judgment ("MSJs"), one

16   filed by Plaintiff Wine Educations Council ("WEC"), and one filed by Arizona Rangers

17   ("AZR").  The MSJs pertain to AZR's illegality defense to the enforcement of a contract

18   between the parties and both are fully briefed.  (*See* Docs. 244; 245; 246; 252; 253; 254;

19   255; 257; 258.)  WEC requested oral argument, (Doc. 254 at 1), but the Court declines to

20   hold oral argument, finding that it is unnecessary.  *See* LRCiv 7.2(f).  The Court has

21   considered the pleadings, evidence, and relevant law, and will now grant WEC's MSJ,

22   (Doc. 244), and deny AZR's MSJ, (Doc. 246), for the reasons explained below.

23   **I.    BACKGROUND**

24        The following facts are undisputed.  AZR is a non-profit law enforcement auxiliary,

25   which is comprised of a total of 22 companies.  (Doc. 245 ¶ 2.)  According to AZR's

26   Bylaws, "a 'Company' is '[a]n operating entity of persons (Rangers) chartered by the

27   Corporation to do business.'"  (*Id.* ¶ 3 (alteration original).)  In December of 2016, Grant

28   Winthrop became a "probationary" member of AZR, and on March 7, 2017, formally

1    joined the organization as an associate member of the East Valley Company.  (*Id.* ¶ 4.)

2    Between November 30, 2016 and October 3, 2017, AZR accepted six grants (the "Grants")

3    from the American Endowment Foundation ("AEF"), totaling $175,000.  (*Id.* ¶ 10.)  All

4    Grant checks were made payable to AZR and were deposited into AZR's Chase bank

5    account, which used AZR's tax identification number.  (*Id.* ¶¶ 31–32.)  The IRS recognizes

6    AZR as a tax-exempt entity.  (*Id.* ¶ 34.)  The parties agree that the Grants "explicitly

7    required AZR, by accepting the Grants, to certify that the funds were to be used

8    'exclusively for charitable purposes,'" and not to "confer a personal benefit upon any

9    individual who is not an appropriate beneficiary of [AZR's] charitable programs."  (*Id.* ¶

10   36.)

11          The remainder of the facts are largely disputed by the parties.  WEC contends that

12   the evidence shows that AZR authorized Mr. Winthrop to spend the grants in accordance

13   with their terms and conditions.  (*Id.* ¶ 14.)  WEC argues that, according to AZR's own

14   internal accounting, "it (and thus, Winthrop), spent the funds in accordance with the

15   Grants' terms and conditions."  (*Id.* ¶ 15.)  WEC further argues that, after an internal

16   investigation, AZR itself concluded that "all fund expenditures had been used to the benefit

17   of the Arizona Rangers and in accordance with restrictions imposed by the donor

18   organizations" and that "no evidence was found that would indicate the existence of a

19   misappropriation of Arizona Rangers assets."  (*Id.* ¶ 20.)

20          Conversely, AZR argues that Mr. Winthrop drafted and submitted each of the six

21   grant recommendations on behalf of AZR that resulted in the issuing of the Grants from

22   AEF to AZR.  (Doc. 253 ¶ 8.)  It contends that Mr. Winthrop—between July 2017 and

23   October 2017—charged $70,807.56 to an American Express card which he opened in

24   AZR's name for dozens of inappropriate purchases purportedly on behalf of AZR.  (*Id.* ¶

25   4.)  AZR scolds Mr. Winthrop for spending large sums of money on a private charter flight

26   from Phoenix to Los Angeles, expensive dinners, expensive cowboy hats, and other large,

27   allegedly inappropriate charges with the Grant funds.  (*Id.* ¶¶ 6–13.)  Additionally, AZR

28   contends that an entity called the "East Valley Troop" is not recognized by the bylaws or

1    policies and procedures of AZR.  (*Id.* ¶ 16.)

2          AZR attempts to bring an illegality defense to WEC's breach of contract claim,

3    arguing that the Grants were illegal because they were subject to taxes under three sections

4    of the Internal Revenue Code ("IRC"): §§ 4966, 4967, 4958.

5    **II.    LEGAL STANDARD**

6          Summary judgment is appropriate when "there is no genuine dispute as to any

7    material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

8    56(a).  A material fact is any factual issue that might affect the outcome of the case under

9    the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

10   A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could

11   return a verdict for the non-moving party.  *Id.*  "A party asserting that a fact cannot be or

12   is genuinely disputed must support the assertion by . . . citing to particular parts of materials

13   in the record" or by "showing that materials cited do not establish the absence or presence

14   of a genuine dispute, or that an adverse party cannot produce admissible evidence to

15   support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  The court need only consider the cited

16   materials, but it may also consider any other materials in the record.  *Id.* 56(c)(3).  Summary

17   judgment may also be entered "against a party who fails to make a showing sufficient to

18   establish the existence of an element essential to that party's case, and on which that party

19   will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

20         Initially, the movant bears the burden of demonstrating to the Court the basis for the

21   motion and "identifying those portions of [the record] which it believes demonstrate the

22   absence of a genuine issue of material fact."  *Id.* at 323.  If the movant fails to carry its

23   initial burden, the non-movant need not produce anything.  *Nissan Fire & Marine Ins. Co.

24   v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).  If the movant meets its initial

25   responsibility, the burden then shifts to the non-movant to establish the existence of a

26   genuine issue of material fact.  *Id.* at 1103.  The non-movant need not establish a material

27   issue of fact conclusively in its favor, but it "must do more than simply show that there is

28   some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith*

1    *Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant's bare assertions, standing alone,

2    are insufficient to create a material issue of fact and defeat a motion for summary judgment.

3    *Liberty Lobby*, 477 U.S. at 247–48.  "If the evidence is merely colorable, or is not

4    significantly probative, summary judgment may be granted."  *Id.* at 249–50 (citations

5    omitted).   However, in the summary judgment context, the Court believes the non-

6    movant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable

7    to the non-moving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).  If

8    "the evidence yields conflicting inferences [regarding material facts], summary judgment

9    is improper, and the action must proceed to trial."  *O'Connor v. Boeing N. Am., Inc.*, 311

10   F.3d 1139, 1150 (9th Cir. 2002).

11          "[T]he party who asserts the illegality of a contract bears the burden of proof on that

12   point."  *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 350 (9th

13   Cir. 2014).

14   **III.    DISCUSSION**

15          AZR's MSJ argues that it is entitled to an illegality defense to WEC's breach of

16   contract claim because "even if the turnover clause were enforceable, WEC, via its

17   assignment from AEF, is not entitled to enforce any turnover clause because the grants

18   initially made, and subsequently spent, were in violation of IRS Statutes and Regulations."

19   (Doc. 246 at 8.)  Moreover, AZR contends that "the East Valley Company (or any "troop"),

20   standing alone, was not qualified to receive a charitable grant from a donor advised fund."

21   (*Id.*)

22          WEC's MSJ argues that the Grants at issue are not illegal because the legislature

23   did not intend for the IRC to invalidate private contracts as punishment and assessing a tax

24   is not a punishment for illegal conduct.  (Doc. 244 at 7.)  WEC also contends that AZR

25   misreads the relevant IRC provisions, and that the provisions do not provide a legal basis

26   for AZR to assert illegality as an affirmative defense.  (*Id.* at 11.)  Additionally, WEC

27   argues that the grants are for completely legal purposes, and therefore the contracts cannot

28   be illegal.  (*Id.* at 16.)

### A. AZR's Standing

As an initial matter, the Court finds that AZR has standing to bring its illegality defense. AZR is not attempting to raise the affirmative defense on behalf of AEF in raising its illegality defense to WEC's breach of contract claim. WEC fails to properly explain how the defense is owned by AEF or why AZR is without standing to raise it. (*See* Doc. 244 at 11–12.)

### B. Illegality Defense in Arizona

Because WEC's breach of contract claim and AZR's illegality defense are based on Arizona law, the Court must apply Arizona law to determine whether AZR has stated a valid illegality defense. *See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims.").

"In Arizona, parties may enter into contracts as they desire, provided only that the contract is not for an illegal purpose or against public policy." *Trap-Zap Env't Sys. Inc. v. FacilitySource Ne. Servs. LLC*, No. 1 CA-CV 18-0278, 2019 WL 3798488, at *3 (Ariz. Ct. App. Aug. 13, 2019) (citing *Gaertner v. Sommer*, 714 P.2d 1316, 1318 (Ariz. Ct. App. 1986)). "Only 'if the acts to be performed under the contract are themselves illegal or contrary to public policy, or if the legislature has clearly demonstrated its intent to prohibit maintenance of a cause of action' should recovery be denied." *Id.* (quoting *Mountain States Bolt, Nut & Screw Co. v. Best-Way Trans.*, 568 P.2d 430, 431 (Ariz. Ct. App. 1977)). "A contract that cannot be performed without violating applicable law is illegal and void." *Id.* (citing *Ruelas v. Ruelas*, 436 P.2d 490, 493 (Ariz. Ct. App. 1968)) (emphasis original).

### C. Winthrop's Subsequent Control Over the Grant Funds

AZR first argues that a donor advisor, such as Mr. Winthrop, is prohibited from controlling funds donated from the donor advised fund he advises "because any direct or indirect benefit to the donor advisor from the donor advised fund is an excess benefit transaction subject to sanctions." (Doc. 246 at 8.) Next, AZR argues that "a donor, by

1  law, is prohibited from directing the donated funds to a specific charity and controlling

2  how the money is spent or used." (*Id.*)  AZR also argues that "that donor is also prohibited

3  from directing those same dollars elsewhere if he stops belonging to the organization."

4  (*Id.*)  Additionally, AZR contends that WEC's position on the turnover clause poses a

5  problem under 26 U.S.C. § 4958.  (*Id.* at 9.)

6      The Court is unpersuaded by AZR's arguments.  Examining the agreement, the

7  Court finds that they were not made for an illegal purpose or against public policy.  *See*

8  *Trap-Zap*, No. 1 CA-CV 18-0278, 2019 WL 3798488, at *3.  Instead, the purpose of the

9  grants was to provide a charitable donation to the AZR, specifically to the East Valley

10  Company.  The grants provided AZR funds for, among other things body armor, Sunshine

11  Acres (a children's home), badges, Westlaw access, search and rescue equipment, and

12  fundraising expenses.  (Doc. 255 ¶ 45; Doc. 109-9 at 4; Doc. 109-16 at 7–8.)  AZR, by

13  their own admission, admits that the grants required AZR to certify that the funds were to

14  be used "exclusively for charitable purposes."  (*See* Doc. 245 ¶ 36; Doc. 253 ¶ 36.)

15  Providing charitable grants to a non-profit for such purposes is certainly not an act that is

16  illegal or against public policy.

17      The Internal Revenue Code provisions cited by AZR do little to change the Court's

18  analysis.  Notably, none of the Internal Revenue Code provisions cited by AZR impose a

19  sanction or penalty for the transactions they describe, instead imposing taxes on a

20  charitable donation in certain situations.  *See generally* 26 U.S.C. §§ 4958, 4966, 4945

21  (imposing taxes).  The imposition of taxes on a charitable donation does not, without more,

22  mean that the underlying agreement is for an illegal purpose or against public policy.

23      The Arizona cases are clear that, in determining whether acts to be performed under

24  a contract are illegal, courts should examine the legislature's intent.  Here, Congress did

25  not clearly intend to the prohibit the type of agreements at issue.  Instead, they merely

26  subject such transactions to taxes.  Furthermore, AZR cites no authority from the Arizona

27  legislature or Congress that declares such an agreement as the one at issue void or implies

28  that such an agreement is illegal or against public policy.  Without such authority, the Court

1    cannot conclude that Congress or the Arizona legislature intended to prohibit charitable

2    grants in such situations as those described in the relevant IRC provisions.

3            WEC argues that AZR does not have factual support for its defense and

4    mischaracterizes evidence in order to attempt to use the defense. (Doc. 254 at 7.) However,

5    the Court need not examine each piece of evidence with a fine-tooth comb in this instance.

6    Even assuming the facts are as AZR contends and Mr. Winthrop brazenly spent grant funds

7    on an expensive charter flight, fancy dinners, and other questionable items, its illegality

8    defense still fails. The purpose of the Grants, when made, were simply not for an illegal

9    purpose or contrary to public policy. The fact that Mr. Winthrop or AEF may have incurred

10   tax liability under the relevant IRC provisions is irrelevant to the purpose for which the

11   grants were made. Clearly the intent of giving the Grants was charitable in nature. Finding

12   absolutely no support in the law for AZR's illegality defense, the Court must reject it.

13       **D. East Valley Company's Eligibility to Receive the Grants**

14           AZR next argues that:

15

16       based on Code Section 4966(c) and the Treasury Regulations promulgated
         thereunder, the East Valley Company (or any "troop"), standing alone, was
17       not qualified to receive a charitable grant from a donor advised fund because
         it is not recognized as a public charity under Code Sections 501(c)(3) and
18       170(b)(1)(A) and the sponsoring organization (AEF, here) did not exercise
         'expenditure responsibility' with respect to the grant in accordance with
19       Code Section 4945(h), making the grant a taxable expenditure subject to
20       penalties.

21   (Doc. 246 at 10.)

22           This argument defies logic and fails for similar reasons that AZR's first argument

23   failed. Notably, contrary to AZR's argument, the IRC provision purportedly violated by

24   the Grant, 26 U.S.C. § 4966, describes the tax it proffers as a just that—a tax—not a penalty

25   or sanction.[1] Simply put, even assuming a tax did need to be assessed on the Grant funds,

26   _____

27   [1] "There is hereby imposed on each taxable distribution a *tax* equal to 20 percent of the
     amount thereof. The *tax* imposed by this paragraph shall be paid by the sponsoring
28   organization with respect to the donor advised fund." 26 U.S.C. § 4966(a)(1) (emphasis
     added); *see also id.* at (a)(2), (c) (describing the imposition of taxes on the fund

- 7 -

1    the fact that a tax needs to be paid on a charitable donation does not render the underlying

2    contract as one for an illegal purpose or against public policy.   Furthermore, AZR's

3    argument that the East Valley Company is not a public charity is nonsensical.  Despite how

4    the Grant letters described the East Valley Company, the East Valley Company is clearly

5    a part of AZR, a non-profit organization.  Simply because the Grant letters defined the East

6    Valley Company differently does not render the Grants as being for an illegal purpose or

7    against public policy.  Accordingly, AZR's illegality defense fails as a matter of law.[2]

8    Accordingly, the Court will deny AZR's MSJ and grant WEC's MSJ.

9         **E.  AZR's Attempt at Summary Judgment on WEC's Breach of Contract Claim**

10          WEC argues that AZR makes an improper request for summary judgment on

11   WEC's breach of contract claim.  (*See* Doc. 246 at 2; Doc. 254 at 11; Doc. 257 at 8.)  As

12   WEC correctly points out, the Court extended the deadline for the limited purpose of

13   discovery regarding the illegality defense, and dispositive motions were to be filed only on

14   that issue.  (*See* Doc. 254-1 at 6: 18–25.)  AZR, in its Reply, argues that because its

15   illegality defense prevails, summary judgment is proper on WEC's breach of contract

16   claim.  Because the Court has found that AZR's illegality defense fails and summary

17   judgment on the defense is appropriate in favor of WEC and against AZR, this issue is

18   irrelevant.

19   **IV.   CONCLUSION**

20          Accordingly,

21          **IT IS ORDERED** granting WEC's MSJ on AZR's illegality defense.  (Doc. 244.)

22          …

23          …

24          …

25          …

26          …

27   _____

     management and describing a "taxable distribution").

28   [2] Having ruled that AZR's illegality defense fails as a matter of law, the Court finds it
     unnecessary to address WEC's argument regarding judicial estoppel.  (Doc. 244 at 13–15.)

1       **IT IS FURTHER ORDERED** denying AZR's MSJ on their illegality defense.

2   (Doc. 246.)

3       Dated this 18th day of July, 2022.

4

5

6

7                  Honorable Susan M. Brnovich
                      United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 9 -