**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wine Education Council, | No. CV-19-02235-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Rangers, | |
| Defendant. | |

Pending before the Court is Plaintiff Wine Education Council's ("WEC") Motion to Enforce Settlement Agreement. (Doc. 316.) Also before the Court is Defendant Arizona Rangers' ("AZR") Response, which includes a Cross-Motion to Enforce Settlement Agreement. (Doc. 321.) WEC filed a Reply. (Doc. 322.) The Court heard oral argument on March 1, 2023, to address a discrepancy in AZR's possession of equipment as described below. After reviewing the parties' arguments and the relevant law, the Court will grant WEC's Motion in part for the following reasons.

**I.     BACKGROUND**

In October 2022, the parties agreed to settle this case. (Doc. 280.) While the parties agree to some final terms, they have yet to finalize a final settlement agreement. (*See* Docs. 316 at 2; 321 at 2.) The dispute at the heart of this Motion is about equipment AZR agreed to return to WEC. (*See* Docs. 316 at 5; 321 at 3.) WEC claims the parties agreed that AZR would return all "equipment remaining in AZR's possession (i.e., that was procured with Grant Funds)." (Doc. 316-1 at 3 ¶ 6.) WEC claims many items listed in equipment lists

AZR provided during discovery are now unaccounted for, including ballistic vests and night vision devices. (Doc. 316 at 3.) AZR contends the parties' agreement concerned "only the equipment [AZR] possessed at the time it entered into the settlement agreement." (Doc. 321 at 6.) Both parties now request that the Court adopt their preferred interpretations and enforce the agreement accordingly. (Docs. 316 at 10; 321 at 9–10.) The parties alternatively request that the Court hold an evidentiary hearing. (*Id.*)

## II.   LEGAL STANDARD

Courts are empowered to enforce valid, complete settlement agreements. *F.D.I.C. v. Nova Fin. and Inv. Corp.*, No. CV-15-00855-PHX-GMS, 2017 WL 956095, at *2 (D. Ariz. Jan. 10, 2017). "Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). Whether the parties entered into an enforceable settlement agreement is a question of state law. *See Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014).

Arizona addresses the construction and enforcement of settlement agreements under general contract principles. *Emmons v. Superior Court*, 968 P.2d 582, 585 (Ariz. Ct. App. 1998). "A valid contract in Arizona consists of 'an offer, acceptance, consideration, and sufficient specification of terms so that obligations can be ascertained.'" *Nova*, 2017 WL 956095, at *2 (quoting *K-Line Builders v. First Fed. Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct. App. 1983). "It is well-established that before a binding contract is formed, the parties must mutually consent to all material terms. Mutual assent is determined based on objective evidence, not the hidden intent of the parties." *Id.* (cleaned up).

## III.   DISCUSSION

At issue is what equipment AZR is obligated to return to WEC. While the parties have yet to finalize a written settlement agreement that incorporates all terms, they used the same language in their briefing to describe the relevant settlement condition. (*See* Docs. 316 at 2; 321-1 at 3.) ("AZR would return to WEC the equipment procured with grant funds that remained in AZR's possession.") Neither party contests the enforceability

of this term, as both parties seek its enforcement. Rather, the parties dispute whether AZR is responsible for returning equipment it purchased with grant money that it may no longer possess. (*See* Docs. 316 at 3; 321 at 7.) Courts interpret contract terms "from the perspective of an average layman and give words their common and ordinary meaning." *Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d 960, 971–72 (Ariz. Ct. App. 2010).

After considering the evidence provided, the Court finds that AZR must return only the equipment that remained in its possession at the time the settlement agreement was made. The evidence presented shows that there was never a consistent inventory list. There was a list from 2018 and a list from 2019 and they don't match up. Clearly this volunteer organization did not have a sophisticated inventory management system. With no consistent inventory list in place, the parties settled this case over the phone. (Doc. 316-1 at 3 ¶ 6.) In an October 3, 2022 email, WEC's counsel summarized the parties' agreement in a bullet-point list that included AZR's "return of the equipment." (Doc. 316-2 at 4.) WEC then provided a draft of the settlement agreement leaving a blank area for AZR to fill in the list of equipment. If AZR had believed that it had agreed to the return of the equipment from the 2018 or 2019 list, then they would have included it in the draft settlement agreement. AZR eventually provided an inventory of the equipment it intended to return. (*See* Doc. 316-6 at 2.)

WEC discovered a discrepancy in the equipment list AZR provided compared to lists provided earlier in the litigation (*see* Doc. 316-8 at 2–3). WEC's counsel requested an explanation for that discrepancy and communicated WEC's desire that the equipment be destroyed or donated to an appropriate organization. (Doc. 316-7 at 2.) AZR's counsel pushed back, asserting AZR would never have agreed to return equipment it potentially could no longer possess. (*See* Doc. 316-9 at 2.) WEC's counsel then reiterated that "[t]he parties agreed that Arizona Rangers would return the equipment in their possession." (*Id.* at 2–3.) No evidence shows AZR agreed to return *all* equipment from the earlier inventories—WEC did not specify what equipment would be returned until well after the parties reached their agreement. Only after discovering the discrepancy did WEC specify

that it wanted AZR to return all equipment purchased with grant funds, in general.

Considering all the evidence, the plain language of the agreement clearly requires only the return of equipment currently in AZR's possession because WEC knew that the inventory changed over time.  Also considering the plain language of the agreement itself, "that remained in AZR's possession," was written in the present tense—AZR must return equipment it possessed at the time of settlement, not what it possessed in 2018 or 2019.  During oral argument, WEC conceded that AZR need not return items not in their possession but suggested that AZR needs to exercise some diligence in identifying what equipment is in its possession.  The Court will thus grant WEC's Motion in part and AZR's Cross-Motion in part—AZR is obligated to return only items that remain in its possession, but AZR must make reasonable efforts to determine the locations of the drone, PVC cards, badges, night vision devices, and the ballistic vests.  Per the discussion from oral argument, AZR must at least attempt to contact former or current Arizona Rangers Wrm, Mudd, East, Droll, and Sankey.  The Court will provide AZR with three (3) weeks to provide a statement of current inventory consistent with these instructions.

The Court will deny WEC's request for an evidentiary hearing because there are no material facts in dispute.  *See Callie*, 829 F.2d at 890.  The parties agree on the language of the operative term.  Neither party disputes that the inventory list changed over time, nor that AZR possesses equipment it must now return.  An evidentiary hearing would uncover no facts that would alter AZR's obligations under the settlement agreement.

Both parties request attorneys' fees under A.R.S. § 12-341.01(A). (Docs. 316 at 10; 321 at 8–9.)  In its discretion, the Court will grant WEC's request.  *See* A.R.S. § 12-341.01(A) ("In any contested action arising out of a contract, express or implied, the court *may* award the successful party reasonable attorney fees.") (emphasis added).  The Court shares WEC's concerns about whether AZR made a sufficient effort to determine what equipment it still possesses.  AZR expended little effort independent of the Court's pre-oral argument instructions.  The Court agrees with WEC that AZR fell well short of its responsibility to catalog what equipment it possessed and would return.  In preparation for

oral argument, AZR's counsel discovered the current location of nine of the twenty-four missing ballistic vests and whether those vests are missing necessary parts. After agreeing to return any equipment it still possessed, AZR should have exercised a similar effort to locate any and all equipment that remained in its possession. Recognizing AZR's failure to do so, the Court will grant WEC's request for attorneys' fees incurred from the preparation of this motion.

WEC also requests interest on the value of the settlement payments. The Court will reject this request, as the parties had a good faith dispute as to the settlement agreement's terms.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting in part WEC's Motion to Enforce Settlement Agreement. (Doc. 316.)

**IT IS FURTHER ORDERED** that AZR shall provide a statement no later than March 22, 2023, explaining what items remain in its possession.

**IT IS FURTHER ORDERED** granting WEC's request for attorneys' fees under A.R.S. § 12-341.01(A). WEC shall have ten (10) days to file its application for attorneys' fees.

Dated this 6th day of March, 2023.

Honorable Susan M. Brnovich
United States District Judge