Cory L. Braddock (#024668)
Amanda Z. Weaver (#034644)
SNELL & WILMER L.L.P.
One East Washington, Suite 2700
Phoenix, Arizona 85004
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: cbraddock@swlaw.com
         aweaver@swlaw.com

*Attorneys for Wine Education Council*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wine Education Council, a Delaware non-profit corporation,<br><br>   Plaintiff,<br><br>v.<br><br>Arizona Rangers, an Arizona non-profit corporation,<br><br>   Defendant. | No. 2:19-cv-02235-PHX-SMB<br><br>**PLAINTIFF WINE EDUCATION COUNCIL'S APPLICATION FOR ATTORNEYS' FEES** |
| Arizona Rangers, an Arizona non-profit corporation,<br><br>   Defendant/Third-Party Plaintiff,<br><br>v.<br><br>Grant G. Winthrop, an individual,<br><br>   Third Party-Defendant/Counterclaimant. | |

  Plaintiff Wine Education Council ("WEC") applies for its attorneys' fees arising out of the settlement agreement and its Motion to Enforce (Docs. 316, 322), pursuant to this Court's Order "granting WEC's request for attorneys' fees" (Doc. 327 at 5), LRCiv 54.2, and A.R.S. § 12-341.01. Accordingly, WEC applies for attorneys' fees in the amount of $28,527.50, which is a reasonable and necessary amount arising from the preparation of its Motion to Enforce, as set forth below.

1  I.   **STATEMENT OF RELEVANT FACTS AND BACKGROUND.**

2  WEC and Defendant Arizona Rangers ("AZR") agreed to settle the case between them in October 2022. (Doc. 327.) Months passed, with WEC finally moving to enforce the settlement agreement as set forth in its Motion. (*See generally* Doc. 316.) This Court found that although the "parties have yet to finalize a written settlement agreement," pursuant to its authority to "enforce valid, complete settlement agreements," AZR was required to return "items that remain in its possession." (Doc. 327 at 2, 4.) This Court also ordered that AZR "must make reasonable efforts to determine the locations" of specific equipment. (*Id*. at 4.)

Moreover, AZR's lack of effort "to determine what equipment it still possesses" raised concerns shared by WEC and the Court. (*Id*.) In part because "AZR expended little effort independent of the Court's pre-oral argument instructions," and its obligation (and corresponding failure) to "exercise[] a similar effort to locate any and all equipment that remained in its possession" *before* being ordered to do so, this Court granted "WEC's request for attorneys' fees incurred from the preparation of th[e] motion [to enforce]." (*Id*. at 4-5.)

II.  **ELIGIBILITY: WEC IS THE SUCCESSFUL PARTY PER COURT ORDER.**

WEC is eligible for its fees as the successful party on its Motion under Arizona law and by Court Order. Under Arizona law, in "any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorneys' fees." A.R.S. § 12-341.01(A). Settlement agreements are contracts under Arizona law. *See, e.g.*, *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014) ("[A] settlement agreement is governed by principles of state contract law." (internal quotation marks and citation omitted)). WEC moved to enforce the parties' settlement agreement (Doc. 316), which AZR contested by both opposing and cross-moving (Doc. 321). This Court granted WEC's Motion in relevant part and, in its discretion, awarded WEC its attorneys' fees associated with the Motion. (Doc. 327 at 4-5.) Accordingly, WEC is eligible for its fees on the Motion to enforce the parties' settlement agreement.

## III. ENTITLEMENT: WEC IS THE SUCCESSFUL PARTY PER COURT ORDER.

Similarly, WEC is entitled to its fees under this Court's Order. (Doc. 327; *see also* Sec. II, *supra*.) Specifically, the Court determined that WEC was the successful party in requiring that AZR "must make reasonable efforts to determine the locations" of specific equipment. (Doc. 327 at 4.) As such, the Court awarded to WEC its attorneys' fees pursuant to A.R.S. § 12-341.01(A). (Doc. 327 at 5.) As the successful party on its Motion in obtaining the relief it requested, WEC is entitled to its attorneys' fees. A.R.S. § 12-341.01(A), (B) ("The award of reasonably attorney fees pursuant to this section should be made to mitigate the burden of the expense of litigation to establish a just claim . . . .").

## IV. REASONABLENESS OF REQUESTED AWARD: WEC SHOULD RECOVER ITS ATTORNEYS' FEES PER A.R.S. § 12-341.01.

WEC's requested award is reasonable as set forth in *Associated Indemnity Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985), and additional relevant factors under the Local Rules. *See also Woerth v. Flagstaff*, 808 P.2d 297, 304 (Ariz. App. 1990) (party requesting its attorneys' fees has the burden to demonstrate that it is entitled to fees).

### A. Factors Concerning the Reasonableness of the Requested Award Weigh in Favor of Awarding WEC Its Requested Attorneys' Fees.

#### 1. The *Associated Indemnity* Factors Weigh in Favor of the Reasonableness of Awarding WEC Its Requested Attorneys' Fees.

The *Associated Indemnity* factors weigh in favor of WEC's requested award as reasonable. The factors as set forth in Associated Indemnity are: (1) the merits of the unsuccessful parties' claim or defense; (2) whether litigation could have been avoided or settled; (3) whether assessing fees against the unsuccessful party would cause extreme hardship; (4) whether the successful party prevailed with respect to all relief sought; (5) the novelty of the legal issues and/or whether such claim or defense had previously been adjudicated in Arizona; and (6) whether the award will overly deter others from bringing meritorious claims or defenses. *Assoc. Indem. Corp.*, 694 P.2d at 1184.

Merits of unsuccessful party's claim or defense: This factor weighs strongly in favor of WEC's requested attorneys' fees. As this Court determined, AZR should have exercised—but failed to exercise—effort to determine all equipment in its possession prior to WEC's filing a motion. (Doc. 327.) And, despite the months of correspondence that WEC presented to this Court whereby WEC attempted to obtain this information prior to filing a motion (*see* Doc. 316-2 to 316-9 (attaching emails between counsel from early October 2022 to late January 2023)), WEC has sought only a reduced amount of attorneys' fees that omits those fees. Instead, WEC requests fees only starting from the drafting of WEC's Motion (Doc. 316). (*See* **Ex. A-1**.)

Whether litigation could have been avoided or settled: This factor weighs strongly in WEC's favor. This Motion, the Court's time, and the fees incurred could have been spared had AZR only undertaken with even some level of diligence what it did once this Court ordered it to do so. Indeed, "as soon as [AZR] received" the Court's order in preparation for oral argument (Doc. 323), "the first thing" it did was "contact[] an individual by the name of Steve Lant who we had been dealing with throughout this case as the contact person for" AZR, who advised them to contact Mike Droll. (Tr. of Oral Argument on Mots. to Enforce Settlement Agreement, at 4:20-5:3.) Why Steve Lant was contacted only *after* the Court entered its order requiring AZR to look for the vests when he was the "contact person" for AZR clearly indicates that had that been done initially, WEC's motion could have been avoided.[1] This fact is even more glaring given that Mr. Lant advised that Mike Droll was the appropriate person to contact—Mr. Droll was in fact one of the authors of the original lists that were part of discovery years ago (*see* Doc. 316-8 at 2), and that WEC's counsel resent to AZR's counsel on December 6, 2022 (Doc. 316-7 at 2). (*See* Doc. 316-8 at 2). AZR's failure to fulfill its obligations to search in good faith led directly to the necessity of WEC filing the Motion.

---

[1] Mr. Lant was also deposed regarding AZR's inventory of equipment, and specifically provided testimony regarding the ballistic vests. (*See* Doc. 316-11 at 6-7.) Despite this, it took a court order for AZR to even undertake this initial simple step.

<u>Whether assessing fees against the unsuccessful party would cause extreme hardship</u>: Awarding reasonable attorneys' fees to WEC would not cause an extreme hardship against AZR and weighs in WEC's favor. In fact, AZR has a prolonged history of raising money to support its organization. For example, it operates a Go Fund Me page that shows AZR was able to raise hundreds of thousands of dollars in just weeks from its numerous public supporters.[2] Additionally, AZR is routinely paid for providing security services that it provides at lower rates because it is not required to comply with the normal licensing required of a security company through an exemption provided to AZR by the legislature. *See* A.R.S. §32-2606. And finally, AZR reports to the Governor of Arizona (Doc. 238 at ¶ 5) and uses the State Seal of Arizona,[3] which is limited by the Secretary of State to be used only by authorized state agencies. *See* A.R.S. § 41-130. Thus, no extreme hardship arises from an award of attorneys' fees against AZR, which purports to operate as an authorized state agency through its use of the Arizona State Seal. In sum, this factor weighs in WEC's favor.

<u>Whether the successful party prevailed with respect to all relief sought</u>: This factor also weighs in favor of WEC. WEC requested as an alternative remedy in its initial Motion and proposed order that AZR "explain" (Doc. 316 at 1), and that AZR "shall provide an explanation" for items no longer in its possession (Doc. 316-12 at 2). This Court likewise recognized that "AZR needs to exercise some diligence in identifying what equipment is in its possession," and ordered that "AZR must make reasonable efforts to determine the

---

[2] Ray Stern, *Phoenix New Times*, "The Arizona Rangers Are Raising Big Money Off Arizona's Ballot Audit," Apr. 29, 2021, available at https://www.phoenixnewtimes.com/news/arizona-rangers-raise-more-than-160k-after-providing-audit-security-11549864.

[3] AZR uses the State Seal of Arizona on its badge. *See* https://azrangers.us/. AZR goes so far as to use the State Seal of Arizona when it raises money through its Go Fund Me page. https://www.gofundme.com/f/arizona-rangers. As if all of these sources of revenue (*e.g.*, a purported state agency, a Go Fund Me campaign, and a thriving private security guard business), is not enough, AZR also sells legal and identity protection plans as another source of revenue. *See* https://azrangers.us/donate/ ("The Arizona Rangers have teamed up with Legal Shield to offer their legal and identity protection plans.").

locations of" particular equipment. (Doc. 327 at 4.) This factor therefore weighs in favor of WEC.

Novelty of the legal issues and/or previous adjudication of claim or defense: WEC acknowledges that neither the Motion nor Cross-Motion asserted novel legal theories, and were instead grounded in well-established principles of contract law. Despite this, AZR resisted WEC's efforts to resolve the parties' disagreement, and filed its own Cross-Motion. This factor therefore should weigh in favor of WEC or, at the very least, be neutral.

Whether the award will overly deter others from bringing meritorious claims or defenses: To the contrary, an award here will encourage others to bring meritorious claims and defenses. As discussed above, AZR did not display diligence while WEC was attempting to resolve the settlement in good faith (for months) without this Court's involvement, and failed to undertake appropriate affirmative action until this Court ordered it to do so. This factor therefore weighs in favor of WEC.

### 2. Additional Factors Under LRCiv 54.2(c)(3) Weigh in Favor of the Reasonableness of WEC's Attorneys' Fees.

In addition to the *Associated Indemnity* factors, LRCiv 54.2(c)(3) includes further factors to address, "as appropriate." Such factors are included below:

The time and labor required of counsel: *See* Section IV.C.2., *infra*.

The novelty and difficulty of the questions presented: *See Assoc. Indem.* factor (5), *supra*.

The skill requisite to perform the legal service properly: While the legal theories associated with the Motion were not novel, they relied on an understanding of the months of correspondence between counsel for WEC and AZR in reliably applying those facts to the applicable law.

The preclusion of other employment by counsel because of the acceptance of the action: The volume of time required to represent WEC with reference to this (what should have been unnecessary) dispute precluded WEC's counsel from assisting other clients.

<u>The customary fee charged in matters of the type involved</u>: *See* Section IV.C.2., *infra*.

<u>Whether the fee contracted between the attorney and the client is fixed or contingent</u>: The fee contracted between counsel and WEC has been fixed. (*See* **Ex. B;** Doc. 293-9.)

<u>The experience, reputation and ability of counsel</u>: *See* Section IV.C.2., *infra*.

**B.     WEC Has Complied with the *China Doll* Requirements.**

An affidavit supporting a request for attorneys' fees "should indicate the type of legal services provided, the date the service was provided, the attorney providing the service (if more than one attorney was involved), and the time spent in providing the service." *Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 932 (Ariz. App. 1983). The attached Braddock Declaration includes detailed time entries for all amounts incurred, identifying the date the work was performed, the duration of time spent on the matter, the attorney providing the service, and a description of the service provided. In his declaration, Mr. Braddock further detailed the reasons why the services provided were reasonably necessary under the circumstances. (**Ex. A**.)

**C.     WEC's Requested Fees Are Facially Reasonable.**

"[D]etermining reasonable attorneys' fees in commercial litigation" requires a court to assess: (1) the reasonableness of the billing rate; and (2) the reasonableness of the hours expended. *China Doll Rest.*, 673 P.2d at 930-33. Indeed, "[r]easonableness is generally analyzed under the 'lodestar method,' which has been adopted as the centerpiece of attorney's fee awards." *Chabrowski v. Litwin*, No. CV-16-03766-PHX-DLR, 2019 WL 1747275, at *1 (D. Ariz. Apr. 18, 2019) (internal quotation marks and citation omitted). "A fee award calculated by a lodestar method—multiplying a reasonable hourly rate by the number of hours expended—is presumptively reasonable." *Id.* (internal quotation marks and citation omitted). WEC's requested fees are reasonable under both criteria.

1.     **The Billing Rates Are Reasonable**

As the fee applicant, WEC has the "burden of producing satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar

1  services of lawyers of reasonably comparable skill and reputation." *Supima v. Phila. Indem.*
2  *Ins. Co.*, No. CV-20-00617-PHX-SPL, 2021 WL 4844311, at *2 (D. Ariz. July 26, 2021)
3  (internal quotation marks and citation omitted). Once a fee applicant presents such
4  evidence, the opposing party "has a burden of rebuttal that requires submission of
5  evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the
6  prevailing party in its submitted affidavits." *Chaudhry v. City of Los Angeles*, 751 F.3d
7  1096, 1110–11 (9th Cir. 2014) (addressing fee award for § 1983 claims).

8          In "commercial litigation between fee-paying clients, there is no need to determine
9  the reasonable hourly rate prevailing in the community for similar work because the rate
10 charged by the lawyer to the client is the best indication of what is reasonable under the
11 circumstances of the particular case." *China Doll Rest.*, 673 P.2d at 931-32 (citation
12 omitted); *see also Orman v. Cent. Loan Admin. & Reporting*, No. CV-19-04756-PHX-
13 DWL, 2020 WL 919302, at *2 (D. Ariz. Feb. 26, 2020) ("When, as here, a client has
14 actually paid fees, the best indicator of a reasonable hourly rate . . . is the rate charged by
15 the lawyer to the client." (internal quotation marks and citation omitted)); *Vasquez v.*
16 *Ameriprise Ins. Co.*, No. CIV 19-536-TUC-CKJ, 2022 WL 801715, at *2 (D. Ariz. Mar.
17 16, 2022) ("Generally, courts have found that the agreed upon rates between the client and
18 the attorney are the best indicator of what reasonable fees under the circumstances of [a]
19 particular case." (internal quotation marks and citation omitted)).

20         The hourly rates for which WEC seeks recovery are the customary billing rates Snell
21 & Wilmer charges for the attorneys' services and are the rates at which WEC was billed for
22 the work performed. (*See* Braddock Decl. (**Ex. A**) ¶¶ 5-8.)  These rates also are consistent
23 with what attorneys with similar education and experience charge for similar work in
24 Maricopa County, Arizona.  (*Id.* ¶ 16.)  To reduce the attorneys' fees incurred
25 commensurate with the amount in dispute, associate Amanda Weaver undertook the

majority of the drafting of the Motion and Reply, subject only to Cory Braddock's oversight on strategy for the Motion and supplemental drafting as overseeing partner. (*See id.* ¶ 14.)[4]

### 2. The Hours Expended Were Reasonable.

"The prevailing party . . . is 'entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest in the pursuit' of a successful appeal." *China Doll Rest.*, 673 P.2d at 932. The *China Doll* court set forth a non-exhaustive list of the type of services that may be included in a fee application, such as conducting necessary research, drafting pleadings and motions, preparing for argument, communicating with the client, and "[t]elephone calls and correspondence with other counsel directly related to the [action]." *Id.*

As the itemized statement of fees that were billed to WEC for work performed on this matter shows, all of the work performed by the referenced attorneys are the type of services that a reasonably prudent attorney would undertake to protect his or her client's interests. (*See* Braddock Decl. (**Ex. A**) ¶ 9 & **Ex. A-1**.) Specifically, all of the work performed by WEC's attorneys in this matter falls into the following categories:

- Preliminary and ongoing assessment of the claims and issues in dispute for the Motion;
- Telephone calls and correspondence with other counsel directly related to the Motion;
- Drafting the Motion and related filings;
- Engaging in various settlement discussions;
- Research needed for drafting the Motion and related filings;
- Preparing post-decision motions.

*See, e.g.*, *China Doll Rest.*, 673 P.2d at 932. Additionally, WEC may recover the attorneys' fees incurred in preparing the instant application for attorneys' fees and memorandum in

---

[4] A third-party expert report has also been presented to this Court on prior attorneys' fee briefing, supporting WEC's claim that the requested rates are reasonable. (Doc. 293-10.)

support. *China Doll* articulates the type of attorney services for which fees may be recovered. In particular, a party is "entitled to recover a reasonable attorney's fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect [its] client's interest . . . ." *Id*. The *China Doll* court included "[p]reparing post-decision motions" as a specific example of services that could be included in a fee application. *Id*. As a reasonable and prudent lawyer would have sought attorneys' fees in this matter, the attorneys' fees for doing so are properly recoverable. *See also Gametech Int'l, Inc. v. Trend Gaming Sys., L.L.C.*, 380 F. Supp. 2d 1084, 1101 (D. Ariz. 2005) ("Including the reasonable time to prepare an attorney's fees application in an award of attorney's fees to the prevailing party furthers the purpose of awarding such fees and does not constitute a windfall or double recovery.").

Indeed, not only were all of these efforts reasonably prudent, but many were necessitated by AZR's unreasonable lack of diligence associated with the equipment, as described above.

For all the foregoing reasons, WEC's attorneys' fees are facially reasonable.

## II. CONCLUSION

For the foregoing reasons, WEC respectfully requests an award of reasonable attorneys' fees incurred in the defense of this matter, in the amount of $28,527.50.

DATED this 16th day of March, 2023.

SNELL & WILMER L.L.P.


By: *s/ Amanda Z. Weaver*
Cory L. Braddock
Amanda Z. Weaver
One East Washington, Suite 2700
Phoenix, Arizona 85004
*Attorneys for Wine Education Council*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of March, 2023 I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

*s/ Pati Zabosky*
4871-6718-9334