**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wine Education Council, | No. CV-19-02235-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Rangers, | |
| Defendant. | |

    Pending before the Court are Defendant/Third-Party Plaintiff Arizona Rangers' ("AZR") and Counterclaimant Grant G. Winthrop's competing Motions for Attorneys' Fees. (Docs. 291; 293.) Consistent with his pursuit for attorneys' fees, Winthrop filed a Motion to Amend Judgment. (Doc. 292.) All three Motions are fully briefed. (*See* Docs. 297; 300; 303; 305–06; 310.) The Court exercises its discretion to resolve these motions without oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). The Court will deny Winthrop's Motions and grant AZR's Motion in part for the following reasons.

**I.       BACKGROUND**

    This case resulted from Plaintiff Wine Education Council's ("WEC") allegation that AZR misused and misappropriated grant money. (Doc. 232 at 2.) AZR denied any wrongdoing and asserted third-party claims against Winthrop for breach of fiduciary duty, negligence, and common law indemnity. (Doc. 16 at 9–10.) AZR alleged that to the extent it was deemed liable to WEC, Winthrop would be liable to AZR. (Doc. 232 at 2.) Winthrop

countersued, alleging claims for abuse of process, breach of contract, unjust enrichment, breach of the covenant of good faith and fair dealing, and common law indemnity. (Docs. 68 at 4; 132 at 9–10, 14.)

Extensive motions practice ensued on the parties' respective claims. The Court dismissed Winthrop's abuse of process claim (Doc. 123 at 4), and the Court later granted summary judgment on all of Winthrop's claims except his claim for reimbursement for $499.97 spent on prototype badges (Doc. 232 at 22.) The Court also denied Winthrop's request for summary judgment as moot when it granted summary judgment against WEC's claim for misuse or misappropriation of funds. (*Id.* at 12.) The Court found AZR's claims against Winthrop became moot once WEC stopped pursuing its claim that AZR misused and misappropriated grant funds. (*Id.*)

AZR and WEC settled their claims in October 2022. (Doc. 280.) The Court later granted Winthrop's request to voluntarily dismiss his remaining $499.97 contract claim and directed the Clerk of Court to enter final judgment between AZR and Winthrop. (Doc. 284.) The Court now considers whether to award either Winthrop or AZR their requested attorneys' fees.

**II.   DICUSSION**

   **A.   Prevailing Party**

Both parties seek attorneys' fees under LRCiv 54.2 and A.R.S. § 12-341.01. (Docs. 291 at 2; 293 at 2.) "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). The parties dispute which party was "successful." The Clerk of Court entered final judgment under Federal Rule of Civil Procedure 54(b) in October 2022, "in favor of Defendant/Third-Party Plaintiff [AZR]." (Doc. 286.) Winthrop requests relief under Rules 59(e) and 60(b)(1) to amend the final judgment as entered in his favor. (Doc. 292 at 5.)

"If the action contains both a claim and a counterclaim arising out of a contract, it is necessary to look at the whole litigation to determine whether there is a successful party." *Liss v. Exel Trans. Servs. Inc.*, No. CV-04-2001-PHX-SMM, 2009 WL 1070876, at *4 (D.

Ariz. July 2, 2009). Courts use one of two methods to determine which party prevailed, the "percentage of success factor" or the "totality of the litigation" test. *Id.* The Court will employ the totality of the litigation test because the dispute between AZR and Winthrop was effectively resolved by AZR's settlement with WEC. *See id.* When evaluating the totality of the litigation, courts consider the following factors: "(1) Whether the party obtained a monetary judgment; (2) Whether the party against which judgment is entered successfully defended against other claims; (3) Whether the party obtained its primary objective in the litigation; and (4) Whether the parties attempted to settle the dispute, thus avoiding the expense of extended litigation." *Id.* (citing *Schwartz v. Farmers Ins. Co. of Ariz.*, 800 P.2d 20, 25 (Ariz. Ct. App. 1990).

The first factor is neutral because neither party obtained a monetary judgment. As noted in the Court's September 2021 summary judgment Order, AZR's claims against Winthrop were contingent on WEC's allegations about misused or misappropriated grant funds. (Doc. 232 at 12.) Thus, AZR's claims against Winthrop became moot when the Court granted summary judgment against WEC's misuse or misappropriation claim. (*See id.*) Winthrop's "success" in defending AZR's claims was tied to AZR's success in defending itself. The Court finds therefore finds the second factor is also neutral.

Third, the Court considers the parties' primary objectives in this litigation. AZR sought for Winthrop to indemnify it for any liability resulting from WEC's claim of misuse or misappropriation of funds. The primary objective of Winthrop's counterclaims was to recoup personal expenditures that AZR failed to reimburse him for. (*See* Doc. 64 at 6–8.) As discussed above, the need for AZR's indemnification became unnecessary because WEC gave up their claim of improper use of grant funds. AZR thus accomplished its goal of avoiding liability for misuse or misappropriation of grant funds.[1] After multiple rounds of motions, the Court either dismissed or entered judgment against all Winthrop's claims

---

[1] It is worth noting that John Winthrop, on behalf of WEC, and Grant Winthrop (John Winthrop's son) represented from the beginning of the case that funds were misappropriated by AZR. It wasn't until oral argument on July 1, 2021, that WEC and Grant Winthrop conceded that they were withdrawing any claims based on misappropriation—almost 2 years after the first complaint was filed.921750

except the $499.97 reimbursement claim he later voluntarily dismissed. Winthrop therefore recovered no funds from AZR's alleged failure to reimburse him. The Court finds that factor three weighs strongly in AZR's favor.

Fourth, the Court must analyze the parties' efforts to settle their claims. Winthrop contends he is the prevailing party because his 2020 settlement offer was equal to or more favorable than the result of this litigation. (Doc. 293 at 8–9.) The Court disagrees. Section 12-341.01(A) considers an offeror of a settlement agreement to be the successful party when "the judgment finally obtained is equal to or more favorable to . . . an offer made in writing." Winthrop's characterization of the settlement agreement ignores the practical realities of this litigation. The conflict between AZR and Winthrop was inextricably intertwined with WEC's claims against AZR. AZR did not simply dismiss its claims against Winthrop, as was contemplated by the settlement offer. (*See* Doc. 293-7 at 2.) AZR's claims were mooted by WEC's transformed theory of the case. (Doc. 232 at 7.) The Court granted summary judgment on the issue of misuse or misappropriation of grant funds in part because WEC's general counsel—Winthrop's father—signed an affidavit in February 2021 stating that WEC's claims were not based on the allegation that items were improperly purchased with grant funds. (*See* Docs. 193-14 at 3–4; 232 at 7 n.1.) Winthrop's 2020 settlement offer would have eliminated the indemnification AZR sought in the third-party complaint before the Court disposed of those claims in September 2021. The Court is unconvinced that the judgment obtained was equal to or more favorable to Winthrop as the offeror and instead finds this factor to be neutral.

With only the third factor weighing in any party's favor, the Court finds that AZR is the prevailing party. The Court therefore also finds that the Clerk of Court correctly entered judgment in AZR's favor, and the Court will deny Winthrop's Motion to Amend Judgment (Doc. 292).

### B.   Eligibility & Entitlement

"The legislature used the phrase 'may award' in authorizing the trial judge to award a successful contract litigant reasonable attorney's fees." *Associated Indem. Corp. v.*

*Warner*, 694 P.2d 1181, 1184 (Ariz. 1985). Arizona Courts have long held that:

> A court has broad discretion whether to award attorney fees and may consider factors including (1) "[t]he merits of the claim or defense presented by the unsuccessful party"; (2) whether "[t]he litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result"; (3) whether the unsuccessful party would suffer "extreme hardship"; (4) whether the successful party prevailed as to all relief sought; (5) whether novel legal questions were presented; and (6) whether the award would discourage parties from litigating or defending legitimate contract issues.

*Goodman v. 12 Univ. LLC*, No. 2 CA-CV 2020-0034, 2020 WL 6878883, at *8 (Ariz. Ct. App. Nov. 23, 2020) (quoting *Warner*, 694 P.2d at 1184). The Court makes the following findings as to each factor:

1. Winthrop had at least one, limited claim with merit that he voluntarily dismissed. The Court either dismissed or entered judgment on Winthrop's other counterclaims. As noted above, the Court did not determine the merit of Winthrop's defenses to AZR's third-party complaint because those issues became moot when WEC changed its theory of the case. This factor is neutral.

2. Winthrop detailed his efforts to settle all claims between him and AZR. As noted above, the viability of those settlement efforts was impacted by WEC's claims against AZR. AZR's efforts to assert third-party claims were not superfluous—AZR's pursuit of indemnification from Winthrop stopped when WEC quit trying to recover misused or misappropriated grant funds. However, Winthrop did not renew his desire to settle the counterclaims after AZR's third-party complaint became moot. Instead, more motions practice ensued on what was reduced to Winthrop's $499.97 reimbursement claim which was not resolved until AZR and WEC agreed to settle. The Court finds this factor weighs in AZR's favor.

3. Winthrop does not explain whether assessing fees against him would cause extreme hardship, as he analyzes this factor from the position that AZR is in the unsuccessful party. Because "the party asserting financial hardship has the burden of coming forward with prima facie evidence of the financial hardship," *Woerth v. City of Flagstaff*, 808 P.2d 297, 305 (Ariz. Ct. App. 1990), and Winthrop has not done so, the Court finds that this factor weighs in AZR's favor.

4. AZR did prevail on the relief sought (indemnification) in the third-party complaint, by forcing John Winthrop to admit there was no misappropriation of funds so that WEC abandoned the claim. This factor weighs in AZR's favor.

5. There is nothing novel about any of the parties' arguments, rendering this factor neutral.

6. The Court finds that an attorneys' fees award, like the $244,260.50 sought by AZR, would not deter others from litigating or defending against legitimate contract issues. Most of Grant Winthrops counterclaims had little merit. This factor weighs in AZR's favor.

Most of the factors weigh in AZR's favor, and the Court will award attorneys' fees accordingly. However, the Court will exercise its discretion to reduce the fees sought as described below.

### C. Reasonableness

A district court must calculate awards for attorneys' fees using the "lodestar" method. *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). "[T]he lodestar figure is presumptively a reasonable fee award," *Ferland*, 244 F.3d at 1149 n.4, but "[a] district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

AZR seeks $244,260.50 in attorneys' fees and $3,865.46 in costs. (Doc. 291 at 23 ¶¶ 15, 18.) Winthrop does not challenge the hourly rates charged by AZR's counsel, instead attacking the reasonableness of time expended. Winthrop argues AZR's fee award should be reduced by $48,801.50 to account for time entries unrelated to litigation with Winthrop and time entries with redactions that prevent the Court from ascertaining the entries' reasonableness. (Doc. 303 at 9–10.)

The Court will reduce AZR's requested amount as follows. First, the Court notes that both parties over-litigated this case. The Court will therefore apply a broad 10% reduction to the overall amount. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation."); *see also Angel Jet Servs., LLC v. Giant Eagle, Inc.*, No. CV-09-10489-PHX-SRB, 2013 WL 11311729, at *1, 9 (D. Ariz. Apr. 17, 2013) (applying *Moreno* to a attorneys' fees application under A.R.S. § 12-341.01). Second, the Court disagrees that the tasks Winthrop's highlights are "unrelated" to AZR's effort to obtain relief from him—but the Court does agree that AZR's application contains numerous over-redactions. With the exception of two partial entries totaling 3 hours billed by Mr. Messing, the entries flagged as over-redactions contain insufficient information for this Court to determine their reasonableness. (*See* Doc. 291 at 27, 32 (.6 and 2.4 hour entries do contain sufficient information).) In its Reply, AZR seeks leave to file unredacted versions of those entries under seal. The Court will not grant that request. As the requesting party, AZR is responsible for establishing the reasonableness of its fee request. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 453 (9th Cir. 2010). AZR had sufficient time to contemplate filing its application or exhibits under seal. After accounting for the 10% "haircut," the Court will also reduce the requested amount by $15,764.50, which equals the $17,564.50 highlighted in Winthrop's Response (*see* Doc. 303 at 11.) minus $1,800 for the six hours described above, where were billed at $300/hour.

AZR also requests attorneys' fees related to the preparation of its application. (Doc. 291 at 15.) While these fees are recoverable under A.R.S. § 12-341.01, *see Schweiger v. China Doll Rest., Inc.*, 673 P.2d 927, 932 (Ariz. Ct. App. 1983) (holding the preparation of post-decision motions are includable in a fee application), AZR did not include the rates or hours in its application because it considered the amount "an ongoing cost." (Doc. 291 at 15.) AZR did eventually include this necessary information in its Reply. (*See* Doc. 306 at 12.) However, Winthrop was not afforded an opportunity to rebut the reasonableness of

AZR's request specifically related to the preparation of its application. The Court will thus deny AZR's requested fees associated with preparing its application.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** denying Winthrop's Motion to Amend Judgment. (Doc. 292.)

**IT IS FURTHER ORDERED** denying Winthrop's Motion for Attorneys' Fees. (Doc. 293.)

**IT IS FURTHER ORDERED** granting in part AZR's Motion for Attorneys' Fees (Doc. 291.) The Court will award AZR its reasonable attorneys' fees in the amount of **$204,069.95** and its costs in the amount of **$3,865.46**.

Dated this 29th day of June, 2023.

*[signature]*

Honorable Susan M. Brnovich
United States District Judge